GEORGE W. DUTCHER v. ELI S. BUCK.

*Partnership—Profit sharing—Liability to third parties.*

1. All of the authorities agree that profit sharing is evidence tending to show a partnership.

2. To constitute one a partner as to third persons, it is not necessary that he should agree to share in the losses of the business; citing *Sager v. Tupper,* 38 Mich. 258, 265.

3. Community of property, interest, and profits in a venture launched for the benefit of two persons makes them both principals, and whatever is done for their mutual benefit must

be deemed to have been done by authority of both; citing *Corey v. Cadwell*, 86 Mich. 570; *Purvis v. Butler*, 87 Id. 248.

Error to Kent. (Grove, J.) Submitted on briefs January 12, 1893. Decided June 23, 1893.

*Assumpsit.* Plaintiff brings error. ` Reversed, and judgment entered for appellant. The facts are stated in the opinion.

*Earle & Hyde*, for appellant.

*Birney Hoyt*, for defendant.

McGRATH, J. This is *assumpsit*, originally brought in justice's court, for work and labor.

The court below made the following findings:

"In the spring of 1889 the defendant was the owner of 840 acres of land in Charlevoix county, in this State. About the 6th of March, 1889, he made the following agreement with one Arthur Leclear: The said Leclear was to go on the defendant's land, and cut logs and bolts, and market and sell and receive payment for the same. He was to pay the expenses of the job, pay the defendant $1.00 a thousand stumpage for logs, and 25 cts. a cord for bolts. He was to furnish the use of a team, and defendant was to furnish the use of a team. Leclear was to have $20 a month for his services, and his wife was to have $3 a week for her services in boarding the men, and what was left was to be divided equally between defendant and Leclear as profits. The stumpage was to be paid first, and then the expenses of the job, including the pay of the men, were to be paid by Leclear; after that, he and his wife to receive above amounts, and balance, if any, divided as above. It was agreed that at any time when Leclear could not, from the proceeds of the logs and bolts, pay expenses, he should cease further work under the contract.

"In the month of December, 1889, the defendant, who lives in the township of Paris, Kent county, Michigan, went to Charlevoix county, and, by a subsequent agreement then made between himself and Leclear, he sold the logs and bolts thereafter for that winter, and collected the pay

96 MICH.—11.

for the same, and paid all the expenses of the job, including the men, out of such money (the subsequent agreement modified the original agreement only as stated); and on the 6th of March, 1890, gave orders to the men upon the railroad station agent for the balance of their wages then due for the winter's work, signing the orders with his own name.

"In May, 1889, the plaintiff, who lives in Byron, Kent county, Michigan, and whose sister was the wife of said Arthur Leclear, went to Charlevoix county, and was employed by Leclear to work on the job. The plaintiff is a deaf-mute of the age of 26 years. He was told by Leclear that he was to pay him, and that the money to pay his wages was to come from Buck. He worked from that time on until the next March. He was paid by defendant, under the said subsequent agreement, for his work from the time that defendant went to Charlevoix in December, 1889, but his work for the previous summer and fall was not paid for. Defendant did not know that plaintiff was not paid for his summer's work until after his final settlement with Leclear. Leclear received, for logs and bolts sold prior to December, 1889, about $2,000, none of which was paid to defendant, except about $16 in money, $20 in road work, and a house, for which Buck allowed Leclear $300, and a barn, $25. Buck paid $104 for supplies for the job at Leclear's request, and this sum, together with the stumpage for the logs and bolts, exceeded the amount received by Buck, as above stated. Said defendant did not, on the 8th of March, A. D. 1890, or at any other time, promise or agree to pay plaintiff for said labor, or any part thereof.

"I find that there was no partnership in fact between Arthur Leclear and defendant. Said plaintiff was not employed to do said work and labor by the said defendant or for him, but said plaintiff was employed by one Arthur Leclear, and said work and labor was done for said Arthur Leclear. Said Leclear had no authority to hire or employ any person for defendant. Said Arthur Leclear and defendant were not partners in any business, and they did not hold themselves out to the plaintiff, or to the public, or to any one, as partners.

"I find, as a conclusion of law, that defendant is not liable in this action to pay plaintiff's claim herein, or any part thereof."

Much controversy has arisen over the conclusiveness of profit sharing as to the liability to third persons of such profit sharer. The authorities upon that question are not harmonious, even in our own State. All, however, agree that profit sharing is evidence tending to show partnership. It was held in *Beecher v. Bush,* 45 Mich. 188, and in *Colwell v. Britton,* 59 Id. 350, that merely sharing in profits, where third persons have not been legitimately led to believe there was a partnership, does not create one as to them, unless there was one in fact. In both of those cases, however, the party sought to be charged as a partner received a percentage of the proceeds as a measure of compensation,— the one as rental, and the other as commission. Both come within the generally recognized exception to the rule laid down by a large number of authorities, that, as to third persons, profit sharing is conclusive as to liability. *Smith v. Bodine,* 74 N. Y. 30; *Leggett v. Hyde,* 58 Id. 278; *Haas v. Roat,* 16 Hun, 527; *Greenwood v. Brink,* 1 Id. 227; *Beudel v. Hettrick,* 45 How. Pr. 198; *Vanderburgh v. Hull,* 20 Wend. 70; *Heimstreet v. Howland,* 5 Denio, 68; *Everett v. Coe,* Id. 180; *Burnett v. Snyder,* 81 N. Y. 550; *Richardson v. Hughitt,* 76 Id. 55; *Eager v. Crawford,* Id. 97; *Ford v. Smith,* 27 Wis. 261; *Nicholaus v. Thielges,* 50 Id. 491; *Smith v. Knight,* 71 Ill. 148; *Niehoff v. Dudley,* 40 Id. 406; *Meserve v. Andrews,* 104 Mass. 360; *Haskins v. Burr,* 106 Id. 48; *Mollwo v. Court of Wards,* 4 Moak Eng. R. 121; *Ross v. Parkyns,* 13 Id. 834, 839 (note); *Ex parte Tennant,* 22 Id. 831; Colly. Partn. (6th ed.), 70–72; Story, Partn. § 27; *Smith v. Watson,* 2 Barn. & C. 401; *Heran v. Hall,* 1 B. Mon. 159; *Bartlett v. Jones,* 2 Strob. 471; *Whitcomb v. Converse,* 119 Mass. 43; *Harvey v. Childs,* 28 Ohio St. 319.

It is not necessary to rest the present case upon this naked rule. The court below, undoubtedly recognizing the rule laid down in *Beecher v. Bush,* that the test of part-

nership as between the parties is their intent, found there was no partnership in fact between Leclear and defendant; but in *Cleveland Paper Co. v. Courier Co.*, 67 Mich. 152, 158, it is held that—

"As to third persons the liability of a partner is frequently imposed, though it was not the intention of the party sought to be charged to become one, and even though a partnership could not have been made."

Numerous authorities might be cited in favor of this proposition.

It is held in *Eastman v. Clark*, 53 N. H. 276, that sharing profits in any other sense than sharing them in the capacity of a principal is not an absolute test of one's liability; that his liability depends upon whether he is a principal, bound by a contract made by himself, or his agent acting by his authority. Chief Justice Bellows died pending consideration of the case, and extracts from his notes are printed with the opinions filed in the case. He said that the recognized test had been announced in various forms as "a community of interest in the profits;" "a participation in the net profits;" "a participation in the profits as profits;" "a specific interest in the profits, with the right to an account;" that, "to constitute a community of interest in the profits, there must be a common interest in them as a principal trader, and as distinguished from a right as a creditor to receive a sum of money out of the profits, or a sum proportioned to the *quantum* of profits, or even a share of the profits as a compensation."

In *Loomis v. Marshall*, 12 Conn. 69, 77, Huntington, J., says:

"This community of profits is the test to determine whether the contract be one of partnership; and, to constitute it, a partner must not only share in the profits, but share in them as a principal."

In *Cox v. Hickman*, 8 H. L. Cas. 268, 306, Lord Cranworth says:

"It is often said that the test, or one of the tests, whether a person not ostensibly a partner is nevertheless in contemplation of law a partner, is whether he is entitled to participate in the profits. This, no doubt, is in general a sufficiently accurate test, for a right to participate in profits affords cogent—often conclusive—evidence that the trade in which the profits have been made was carried on in part for or on behalf of the person setting up such a claim. But the real ground of the liability is that the trade has been carried on by persons acting on his behalf. When that is the case, he is liable on the trade obligations, and entitled to its profits, or to a share of them. It is not strictly correct to say that his right to share in the profits makes him liable to the debts of the trade. The correct mode of stating the proposition is to say that the same thing which entitles him to the one makes him liable to the other, namely, the fact that the trade has been carried on on his behalf; *i. e.,* that he stood in the relation of principal towards the persons acting ostensibly as the traders, by whom the liabilities have been incurred, and under whose management the profits have been made."

The doctrine of these cases is the groundwork of the opinion of Mr. Justice Cooley in *Beecher v. Bush,* where it is said that the elements of partnership are—

"Community of interest in some lawful commerce or business, for the conduct of which the parties are mutually principals of and agents for each other, with general powers within the scope of the business, which powers, however, by agreement between the parties themselves, may be restricted at option, to the extent, even, of making one the sole agent of the others and of the business."

In the present case the agreement was that both parties should be compensated, the one for the timber, and the other for services; each supplied a team of horses; help was to be employed, and the wife was to be paid a certain amount for the board of such help; the timber was to be converted into logs and bolts; Leclear was to market and sell the logs and bolts, and pay the expenses, not only the stumpage and his own wages, and the board of the men, but all the expenses, including the wages of the men.

The manner in which the business was to be conducted was regulated by the agreement. Leclear was left no option except such as might be exercised by a mere foreman. In December the only modification made in the agreement was that defendant, instead of Leclear, should market and sell the products, collect the proceeds, pay the expenses, and account for the balance. The character of the venture was not changed. Leclear was none the less agent of both when he was paying out their moneys for labor expended upon their logs and bolts, than was defendant after December. Although the agreement provided that Leclear should pay the expenses, it is evident that such expenses were to be paid out of the proceeds, and the contract provided that, at any time when Leclear could not from such proceeds pay the expenses, he should cease to work.

The only provision lacking in this arrangement is one with reference to joint participation in losses. As between themselves the inference is, if any losses were sustained by an excess of expenses over proceeds, that Leclear should pay such loss. But to constitute one a partner as to third persons, it is not at all necessary that he should agree to share in the losses of the business. *Sager v. Tupper,* 38 Mich. 258, 265.

It is clear that these operations were carried on in behalf and for the benefit of both Leclear and defendant. When the timber was converted into logs and bolts, such products became the property of both. The labor was expended, reducing the timber to that condition, for the benefit of both, in order that profit might be realized. Upon the sale of the products the proceeds belonged to both. In *Beecher v. Bush* it is said: "If either had failed to perform his part of the agreement, the remedy of the other would have been a suit at law, and not a bill for an accounting;" but, in the present case, defendant would certainly have been compelled to resort to the latter remedy. Here were all

the *indicia* of partnership relations, except, perhaps, that defendant was not to share in losses. The business was in no sense Leclear's independent business, carried on by him in his own way. The conduct of the business was restricted and regulated by the agreement. There was community of property, community of interest, and community of profits. The venture was one launched for the benefit of both parties. Both were principals, and what was done for their mutual benefit must be deemed to have been done by authority of both. *Corey v. Cadwell*, 86 Mich. 570; *Purvis v. Butler*, 87 Id. 248.

The judgment below is therefore reversed, and judgment entered here for the amount of the judgment in the justice's court, with interest from the date of said judgment, and costs of both courts.

LONG and GRANT, JJ., concurred with McGRATH, J.

MONTGOMERY, J. *(dissenting)*. The sole question in this case is whether the defendant was, as to the transactions out of which the claim of plaintiff arose, a partner of one Leclear.

Among the findings of fact by the circuit judge are the following:

"I find that there was no partnership in fact between Arthur Leclear and defendant. Said plaintiff was not employed to do said work and labor by the said defendant or for him, but said plaintiff was employed by one Arthur Leclear, and said work and labor was done for said Arthur Leclear. Said Leclear had no authority to hire or employ any person for defendant. Said Arthur Leclear and defendant were not partners in any business, and they did not hold themselves out to the plaintiff or to the public, or to any one, as partners."

The evidence is not returned, and no attempt has been made to present the question of whether the evidence supports the findings. It is insisted, however, that the Court may look into the other findings of the facts and

circumstances, with a view to ascertaining whether the facts specifically found are conclusively inconsistent with the finding that there was no partnership in fact. The facts so found are the following:

The defendant was the owner of 840 acres of land in Charlevoix county, both the defendant and Leclear being residents of Kent county. An agreement was made in March, 1889, between Leclear and defendant, by the terms of which it was agreed that " Leclear was to go on the defendant's land, and cut logs and bolts, and market and sell and receive payment for the same. He was to pay the expenses of the job, pay the defendant $1.00 a thousand stumpage for logs, and 25 cents a cord for bolts. He was to furnish the use of a team, and defendant was to furnish the use of a team. Leclear was to have $20 a month for his services, and his wife was to have $3 a week for her services in boarding the men, and what was left was to be divided equally between defendant and Leclear as profits. The stumpage was to be paid first, and then the expenses of the job, including the pay of the men, were to be paid by Leclear; after that, he and his wife were to receive the above amounts, and balance, if any, divided as above. It was agreed that at any time when Leclear could not, from the proceeds of the logs and bolts, pay the expenses, he should cease further work under the contract."

This was found to be the agreement under which the operations were proceeding at the time the liability to plaintiff arose. I do not think that this finding is conclusively inconsistent with the finding that there was no partnership in fact between Leclear and defendant. If the terms of the agreement between the parties are to control the transaction, under no circumstances could Leclear, without violating the agreement, incur expenses which should become chargeable to the parties to the contract as partners. It was specifically agreed that, when Leclear could not pay the expenses, he should cease further work under the contract. The expenses of the job were to be paid by Leclear individually, and by the order of

payment the stumpage was to be first paid, and his own and his wife's wages were to be paid only in case there was a surplus after paying the workmen. The general finding imports that the parties did not intend a partnership, and it must be assumed that there was evidence to support this finding.

It is stated in Lindl. Partn. p. 10: "Whether an agreement creates a partnership or not depends on the real intention of the parties to it." See *Pollard v. Stanton,* 7 Ala. 761; *Gray v. Gibson,* 6 Mich. 300; *Beecher v. Bush,* 45 Id. 188. It is said, however, that, if parties have in fact stipulated for all the rights of partners, an agreement that they shall not be partners is a useless protest against the consequences of their real agreement; but a specific agreement negativing a partnership may throw light on other clauses, and rebut inferences which might be drawn from them alone. Lindl. Partn. p. 11. Generally, profit sharing is *prima facie* evidence of an agreement of a partnership, and, in cases where the contrary intention does not appear, undoubtedly evidence of profit sharing is sufficient to constitute the parties coparthers. The same author further says:

"Indeed, it has often been said that community of profit is the test of partnership. This, however, is not accurate. Whether persons are really partners or not is a question of intention, to be decided by a consideration of the whole agreement into which they have entered, and ought not to be made to turn on one or two only of the clauses in it."

In the well-considered case of *Beecher v. Bush,* 45 Mich. 193, it was said:

"If parties intend no partnership, the courts should give effect to their intent, unless somebody has been deceived by their acting, or assuming to act, as partners; and any such case must stand upon its peculiar facts, and upon special equities. It is nevertheless possible for parties to intend no partnership, and yet to form one. If

they agree upon an arrangement which is a partnership in fact, it is of no importance that they call it something else, or that they even expressly declare that they are not to be partners. The law must declare what is the legal import of their agreements, and names go for nothing when the substance of the arrangement shows them to be inapplicable. But every doubtful case must be solved in favor of their intent; otherwise, we should 'carry the doctrine of constructive partnership so far as to render it a trap to the unwary.'"

And again, at page 200, it is said:

" In so far as the notion ever took hold of the judicial mind that the question of partnership or no partnership was to be settled by arbitrary tests it was erroneous and mischievous, and the proper corrective has been applied. Except when one allows the public or individual dealers to be deceived by the appearances of partnership when none exists, he is never to be charged as a partner, unless by contract and with intent he has formed a relation in which the elements of partnership are to be found."

Partnership is a species of agency, and, where the parties to a contract do not themselves intend a partnership, it would seem, on principle, that the one who is unknown to those who deal with the others should be held only on the same ground that an undisclosed principal would be bound. This would preclude recovery in the present case, or in any case where the right of an ostensible principal to contract on behalf of the other is negatived by the very terms of the contract; and cases are numerous in which this test has been applied. *Cox v. Hickman,* 8 H. L. Cas. 268; *Eastman v. Clark,* 53 N. H. 276; *Dwinel v. Stone,* 30 Me. 384; *Clifton v. Howard,* 89 Mo. 192 (1 S. W. Rep. 26); *Newberger v. Friede,* 23 Mo. App. 631. See, also, *Morrison v. Cole,* 30 Mich. 102; *Runnels v. Moffat,* 73 Id. 202; *Murphy v. Craig,* 76 Id. 155; *St. Denis v. Saunders,* 36 Id. 370.

In the present case the profits, over and above the stumpage and expenses of putting in the timber, were to be

divided between defendant and Leclear; but it is distinctly found as a fact by the circuit judge that Leclear did not represent the defendant in doing this work, and the special facts found are not necessarily in conflict with this finding. The whole control of the work was with Leclear. He was to collect all the proceeds of the sales, he was to pay all expenses, must cease work when he was unable to do this, and the facts are entirely consistent with an intent on the part of the parties that the division of the excess was as a measure of compensation for the stumpage value of the timber.

I think the finding below should be sustained, and the judgment affirmed.

HOOKER, C. J., concurred with MONTGOMERY, J.