CANTON BRIDGE CO. *v.* CITY OF EATON RAPIDS.

1. PARTNERSHIP—CONSTRUCTION OF AGREEMENT—INTENT.
   To determine whether persons are in fact partners, it is necessary to look at their intention; and this is deducible from their declaration in regard thereto, and from the agreements made with reference to the subject-matter of their dealings.

2. SAME.
   Where the contract under which a business engagement is made

| | |
|---|---|
| 107 | 613 |
| 109 | 349 |
| 107 | 613 |
| s 113 | 329 |
| 107 | 613 |
| 128 | 74 |
| 107 | 613 |
| s 65 NW | 761 |
| 131 | 8 632 |
| 107 | 613 |
| 144 | 4 276 |
| 144 | 4 277 |
| 107 | 613 |
| 147 | 1 502 |

contains an express or implied disavowal of an intention to assume the partnership relation, no partnership will be found to exist, unless such declaration is so inconsistent with the engagement of the parties as to be irreconcilable, in which case the latter must control.

3. SAME—SHARING PROFITS AND LOSSES.

Mere participation in the profits and losses of a business does not necessarily constitute a partnership *inter se.*

4. SAME—ABSENCE OF COMMUNITY OF PROPERTY.

A contract by which a bridge-manufacturing company appoints a certain person as its agent to contract for the erection of bridges, and to do such other work as it may direct, agreeing to advance the general expenses of the business, and to pay to such person one-half of the net profits as compensation for his services, the same to be ascertained by deducting from the contract price for each bridge the cost of the material and labor entering into its construction, does not create a partnership as between the parties, although it also provides that any losses are to be borne equally; such person not being required to make any cash investment, and it not appearing that he was to own any share in the materials furnished. MONTGOMERY, J., and McGRATH, C. J., dissenting.

Error to Eaton; Smith, J. Submitted June 6, 1895. Decided December 24, 1895.

*Assumpsit* by the Canton Bridge Company against the city of Eaton Rapids to recover the amount alleged to be due upon a contract for the construction of a bridge. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Reversed.

*John M. Corbin,* for appellant.

*Huggett & Smith* and *C. O. Markham,* City Attorney (*H. F. Pennington,* of counsel), for appellee.

HOOKER, J. To determine whether persons are in fact partners, we must look at their intention, and this is deducible from their declaration as to their intention, and the agreements that they make regarding the subject-matter; and, where the contract under which the business

engagement is made contains the express or implied disavowal of an intention to assume the partnership relation, no partnership will be found to exist, unless such declaration is so at variance and so inconsistent with their engagement as to be irreconcilable. If the actual engagements are incompatible with the expression of intention, the latter must yield to the former; but, where they can be reconciled, the latter must govern. Mr. Justice COOLEY says in *Beecher* v. *Bush*, 45 Mich. 193: "If parties intend no partnership, the courts should give effect to their intent, unless somebody has been deceived by their acting or assuming to act as partners; and any such case must stand upon its peculiar facts, and upon special equities." And Chancellor Kent, in the case of *Post* v. *Kimberly*, 9 Johns. 504, after admitting the rule that expressions of intention must yield to actual engagements, says: "But every doubtful case must be solved in favor of the intent; otherwise, we should carry the doctrine of constructive partnership so far as to render it a trap to the unwary." We see no reason to force partnership relations and obligations upon parties who did not desire or intend to assume them, especially where the interests or rights of third parties are not to be affected. With this in view we will examine the contract between these alleged partners, in the light of the circumstances surrounding the transaction.

The Canton Bridge Company was a manufacturer engaged in providing material and manufacturing and erecting bridges from iron, having an extensive factory at Canton, Ohio, and doing business in that and other States. An examination of the written contract between the plaintiff and Mr. Wheaton will show its first provision to be a recital of the fact that "the Canton Bridge Company has this day appointed R. D. Wheaton its agent to contract for bridges and general iron work, *and to do any other work in connection with the general business,* when directed," in several States. It agreed to advance all

money necessary to pay all general expenses incurred in said business, upon detailed statements of account, rendered monthly. Wheaton promised to devote his entire time and ability to the business, in consideration of which the Canton Bridge Company agreed to pay to Wheaton *one-half of the net profits.* These were to be arrived at by deducting the expenses from the contract price of jobs, the balance to be divided equally; losses, if any, to be divided in the same way. There was a further agreement that the company should buy a one-half interest in certain tools owned by a firm, then existing, of R. D. Wheaton & Co., said interest belonging to one Darst.

Under this contract the parties were to share the profits and losses, but the Canton Bridge Company was to furnish the material and labor, or advance the necessary funds to pay for the same. There is nothing to indicate that Wheaton was to own any share in these materials. He was to give his services, and that was all of the obligation that he assumed. The contract does not bind him to put a dollar into the common enterprise. These things being true, it is entirely consistent that he should be an agent, as the contract states, and that he should be *"paid"* by the company for *"his services,"* and that his salary or compensation should be *one-half of the profits.* Numerous decisions support the proposition that a share of the profits may be treated as *compensation* merely. See authorities cited in the opinion of Mr. Justice McGRATH in *Dutcher* v. *Buck,* 96 Mich. 163.

Does the sole remaining fact, viz., the sharing of losses, necessarily make the parties partners, against the express agreement that Wheaton *was agent,* to be *"paid"* by *plaintiff* for his *"services,"*—for whatever *labor it should direct him to perform in relation to its property?* It would seem to be reasonable to conclude that the provision concerning losses was designed to induce care on the part of the agent in taking contracts. It carried his interest in case of unprofitable work a little beyond the line of

the mere loss of profits, and no reason suggests itself why that might not be consistent with the existence of an agency, instead of a partnership. In *Beecher* v. *Bush*, 45 Mich. 199, numerous cases are cited to the proposition that a share of the profits may be *compensation for services.* Ordinarily, an agreement to put service against capital, and share the profits and losses, will warrant the inference of a partnership; but such does not absolutely constitute a partnership, as a legal conclusion, where other circumstances show that no partnership was created or intended. See 1 Bates, Partn. § 29, where this subject is discussed, and numerous instances cited to show that the intention controls where not inconsistent with the undertakings of the parties. We understand this to accord with the views expressed by Mr. Justice COOLEY in *Beecher* v. *Bush.* Among the cases cited in support of this proposition by the author quoted is *Morgan* v. *Stearns*, 41 Vt. 398, in which it is said, that "sharing in the profits and loss of the business is not decisive as between the parties, as this may have been merely an arrangement with a view to compensation for services." Again, where plaintiff was to cultivate defendant's farm, each to pay half of the expenses, and divide the profits equally, a charge that they were partners was held erroneous. *Donnell* v. *Harshe*, 67 Mo. 170. This arrangement plainly covered a sharing of the losses, as well as profits; and such contracts are of every-day occurrence, yet no one thinks of treating them as partnerships, though they might be if the parties so intended. In *McDonald* v. *Matney*, 82 Mo. 358, B., the owner of a bank, agreed to give A. one-third of his net profits for a year; A. to bear one-third of the losses, and to attend to the business, but B. to have entire control. The court said that mere participation in profit and loss does not necessarily constitute a partnership *inter se*, but that it is a question of intention. Where plaintiff was to share in profits and losses of defendant's

business for three years, in the proportion of 17½ per ·cent., and to act as salesman, but not to have the right of partnership in the firm, and the capital then standing to his credit on the books was to remain in at 7 per cent., but he could draw an annual amount for his support, it was held that the parties were not partners *inter se.* ·*Osbrey* v. *Reimer*, 51 N. Y. 630. See, also, *Stevens* v. *Faucet*, ·24 Ill. 483; *Fawcett* v. *Osborn*, 32 Ill. 412; *Mair* v. *Glennie*, 4 Maule & S. 240; *Dwinel* v. *Stone*, 30 Me. 384; *Ross* v. *Parkyns*, L. R. 20 Eq. 331; *Walker* v. *Hirsch*, 27 Ch. Div. ·460; *Bullen* v. *Sharp*, L. R. 1 C. P. 86.

In the case of *Monroe* v. *Greenhoe*, 54 Mich. 9, "a man arranged with a firm that he would buy standing timber, and cut, pile, and ship it, being paid therefor its cost and a certain sum per thousand. The firm was to sell it, and, after paying all expenses, was to divide the net proceeds with him equally, and he was to bear half the losses. But he had nothing to do with disposing of it after shipment, .and the firm had no control over it before. *Held*, that this arrangement did not amount to a partnership as to the unshipped lumber, at least; and the parties concerned could not be taxed as a firm upon such lumber." In that case Mr. Justice CAMPBELL, speaking for a unanimous bench, said: "We do not think this agreement made any partnership, in the proper sense of the term, except, *possibly*, in such lumber as was actually loaded on the cars, and there are difficulties in the way of holding even ·that."

*Dutcher* v. *Buck*, 96 Mich. 160, should not be held conclusive of the question in this case. There was, in that instance, "community of property, interest, and profits." Such was not the case here, for there was not community ·of property. Wheaton was owner of nothing, while the plaintiff was owner of all materials, and its credit might be pledged upon the basis of monthly payments for labor .and such materials as it did not furnish. Again, in the ·case before us the status of the parties is made clear, and

it is apparent that the relation of principal and agent was intended. It does not appear so clearly in *Dutcher* v. *Buck.*

The circuit judge was therefore in error in his instruction that the plaintiff and Wheaton were copartners, and that a verdict must be rendered for the defendant. The judgment should therefore be reversed. A new trial is directed.

Long and Grant, JJ., concurred with Hooker, J.

Montgomery, J. (*dissenting*). On the 22d day of December, 1892, plaintiff and R. D. Wheaton executed the following contract:

"This agreement, made and entered into this 22d day of December, 1892, by and between the Canton Bridge Company, of Canton, Ohio, of the first part, and R. D. Wheaton, of Charlotte, Michigan, of the second part, witnesseth: The party of the first part has this day appointed said second party agent, to contract for bridges and general iron work, and to do any other work in connection with the general business when directed by the first party, in the following territory, to wit: Michigan, Wisconsin, Illinois, and all the counties in Indiana except Elkhart, Allen, Miami, and Noble counties. The party of the first part to advance all the money necessary to defray all general expenses incurred in said business, on detailed expense accounts, to be furnished to the Canton office at the end of each and every month after the time this contract takes effect. Said second party agrees to devote his entire time and ability to said business to the best interests of the above parties described, in above territory. In consideration of services rendered by said second party, said first party agrees to pay said second party one-half of all net profits on work contracted in said territory. Said profits are to be arrived at on the following basis: Average cost of metal per pound, card labor on each job, freight per pound, erection per contract, lumber per contract, contractor's expenses, and sundry expenses, or any other actual expenses on the work, all of which is to be charged to each contract, and deducted from the contract price of each job or contract, and the

balance to be equally divided between the parties to this contract. Any other receipts to be divided equally. In case of loss on a job or contract, the same is to be divided equally between the parties to the contract.

"It is further agreed that the party of the second part is to have charge of above territory, and to use his best judgment in managing the same. In case of a dispute in regard to cost of work, the party of the second part is to have free access to the books of the company at any time. It is also agreed that the party of the first part is to purchase one-half interest in the erection tools, office fixtures, etc., now held by J. C. Darst, of the firm of R. D. Wheaton & Co., provided they can be purchased for a reasonable price, the party of the second part to hold his one-half interest in above tools, etc.

"This contract is to take effect January 1, 1893, and to hold good for five years, unless dissolved by mutual consent.

"In consideration of the above, we hereby bind ourselves by these presents."

Upon the execution of this contract, the Canton Bridge Company purchased Darst's interest in the construction tools, as provided by the contract. From the making of this contract on, as appears by the testimony of plaintiff's witness and agent, the business contemplated by the contract was done in the name of R. D. Wheaton & Co. Shipments were made by the plaintiff in that name. Various contracts were taken from time to time, and a regular account with R. D. Wheaton & Co. opened and kept on the books of the plaintiff. The custom was for Mr. Wheaton to make collections. In September, 1893, a contract for the construction of a bridge for the defendant was made in the name of R. D. Wheaton & Co. The bridge was constructed in pursuance of the contract by the plaintiff. After the making of the contract, and before the construction of the bridge, there was some misunderstanding between the plaintiff and Wheaton, and an attempted adjustment of their matters. In the course of these negotiations the plaintiff gave to Wheaton an order upon the defendant for the con-

tract price of the bridge, but subsequently revoked this order, and notified the defendant that the contract was the property of the plaintiff, and demanded pay. The testimony offered by the plaintiff, however, shows that, in any event, Wheaton is interested in the profits of the job, and entitled to a share in them; and, if it has a right to rescind the transfer to him in the manner in which it was attempted,—a point which we deem it unnecessary to decide in the case,—it re-established the relation which the parties bore to the contract in the first instance; and this leads to the inquiry, which presents itself at the threshold of the case, of whether plaintiff and Wheaton were, by the contract set out, as interpreted and acted upon by them, copartners; for, if they were, it is clear that the disagreement between the parties cannot be made the subject of litigation in this suit at law, but both must join.  Story, Partn. § 241.

Under this contract, there was an agreement to share the profits and losses.  There was an agreement on the part of Wheaton to devote his time and energies to the interests of the parties; an agreement on the part of the plaintiff to advance the money necessary to defray all expenses.  The profit should be arrived at after deducting the cost of the material and the expenses, including the work, etc.; and it is very clear that the losses on the contract or job would be determined in like manner. This, of necessity, involved a community of interest in the material, as fast as it was furnished, whether furnished by the plaintiff or purchased by Wheaton or the plaintiff. Should a loss of the material occur by fire or otherwise, or should a loss be met by failure to collect the contract price, it would be the joint loss of the parties to the contract.  Both are alike interested.  It is true the plaintiff agrees in terms to pay one-half the profits in consideration of services rendered, and, if this were all that the contract provided, it would not necessarily import a partnership; but the contract goes further, and provides for

sharing losses. It is difficult to conceive of any right which a partner can have in any case which Wheaton did .not have, and has not, with the approval of plaintiff, exercised under this contract. He is to have charge of the designated territory, and to use his best judgment in managing the same. This he did by making contracts in an agreed firm name. He is to have access to the books. He did in fact make collections, and plaintiff's secretary testified that he was relied upon to make collections, and that he understood the arrangement to be that he was to make collections until he was notified differently. We think that, under these circumstances, it should be held that the two parties to the contract were partners. 1 Lindl. Partn. 12; *Hunt* v. *Erikson*, 57 Mich. 330; *Corey* v. *Cadwell*, 86 Mich. 570; *Dumanoise* v. *Townsend*, 80 Mich. 307. The fact that he is designated as "agent" in the contract, and that the writing refers to his profits as "pay," cannot affect the result, if, by the plain provisions of the contract, he is constituted a partner. See *Dutcher* v. *Buck*, 96 Mich. 169; *Beecher* v. *Bush*, 45 Mich. 193.

The circuit judge committed no error in directing the verdict for defendant. The judgment should be affirmed.

MCGRATH, C. J. I think that the question as to whether a partnership existed in the present case depends upon whether or not there was a community of interest in the output, and I am inclined to think there was; hence I concur with Mr. Justice MONTGOMERY.