SCHOLTZ *v.* FREUD.

1. PARTNERSHIP—EVIDENCE.

Where two persons were sued as partners, and one of them defaulted, his statements, tending to show the existence of a partnership, should have been excluded.

2. SAME—HARMLESS ERROR.

But their admission was not reversible error, the court having instructed that they were not binding on the other defendant·

3. SAME—INSTRUCTIONS.

In an action to charge two persons as partners, it was error to instruct that "participation in the profits of an enterprise is at least some evidence of a partnership between the parties so participating," where such instruction, taken in connection with what preceded it, would warrant the inference that the finding of a partnership might rest on such evidence alone, without regard to the truth of defendants' contention that the profits were shared in part payment for a loan from one defendant to the other.

4. SAME—EVIDENCE.

It was also error to refuse to permit defendants to testify as to the relations existing between them, and as to who were in fact interested in the business, on the ground that the questions called for conclusions of law.

Error to Saginaw; Snow, J. Submitted April 19, 1901. Decided July 19, 1901.

*Assumpsit* by Otto Scholtz against Julius Freud and Robert McKinney, copartners as the American Potato Flour Company, Limited, for goods sold and delivered. From a judgment for plaintiff, defendant Freud brings . error. Reversed.

*Humphrey & Grant* (*Henry M. Butzel*, of counsel), for appellant.

*John F. O'Keefe*, for appellee.

HOOKER, J. Previous to January 1, 1897, a corporation called the "American Potato Flour Company, Limited," was engaged in the business of manufacturing and selling potato flour, and owned a building in which it carried on business in Saginaw. Robert McKinney was superintendent and owner of an interest in the patent under which it operated, and Michael Keenan was interested as a stockholder. In the year 1896 it contracted for potatoes, and many were delivered and manufactured. Not having money to pay for all contracted, some potatoes belonging to the plaintiff were stored in his name. It was a disputed question whether or not the American Potato Flour Company resumed business; but in the spring of 1897 the business was conducted by some one in the name of the corporation; Mr. Keenan testifying for plaintiff that this name was used by defendants because of the reputation of its product. An arrangement was made to take plaintiff's potatoes, and they were manufactured and the product sold, and the plaintiff has sued in this action these defendants as the purchasers of his potatoes, and recovered a judgment. McKinney suffered judgment upon default. Defendant Freud has appealed.

The most important question in the case is whether there is any evidence establishing *prima facie* a partnership. The plaintiff claims, and Keenan testified, that the corporation became insolvent in 1896; that he, Keenan, carried on the business for his sole benefit, under the name of the defendant company, from April 10 to May

20, 1897. Plaintiff asserts that after May 20th Freud and McKinney were copartners, and that he received for 2,264 bushels of potatoes three due-bills, dated, respectively, May 25, $407.75, June 2, $123.25, and July 9, $21. Most of the testimony claimed to show that Freud was a partner consists of conversations with McKinney. McKinney was a defendant, who had permitted his default to be entered. He thereby admitted his liability, and the amount of damages only was to be determined. See 1 Green, Prac. 460. There was therefore no occasion to show the statements of McKinney, and they should have been excluded. As the court told the jury, such statements were not binding upon Freud. Counsel claim that this instruction was equivocal, and contend that it was probably understood to mean that they were not conclusive evidence of partnership against Freud. We think that it would have been better to have given defendant's fourth request; but the language used should not have been misunderstood, especially as the subject had been mentioned several times during the trial. Many pages of the briefs of counsel have been necessarily devoted to a discussion of the testimony, for the purpose of showing whether or not the question of the existence of a copartnership should have been left to the jury. We cannot elaborate our conclusions, but, after a patient examination of both briefs and record, we are of the opinion that the court could not have done otherwise than submit the question of fact to the jury.

We do not need to discuss the question whether participation in profits alone necessarily makes persons copartners in all cases, as the court did not so charge the jury. It certainly does not. See *Dutcher* v. *Buck*, 96 Mich. 160 (55 N. W. 676, 20 L. R. A. 776); *Canton Bridge Co.* v. *City of Eaton Rapids*, 107 Mich. 616 (65 N. W. 761). The instruction was given that participation in the profits of an enterprise is at least some evidence of a partnership of the parties so participating. Doubtless this instruction was based upon the language used in *Dutcher* v. *Buck*,

96 Mich. 163 (55 N. W. 677, 20 L. R. A. 777), where it is said:

"Much controversy has arisen over the conclusiveness of profit sharing as to the liability to third persons of such profit sharer. The authorities upon that question are not harmonious, even in our own State. All, however, agree that profit sharing is evidence tending to show partnership. .It was held in *Beecher* v. *Bush,* 45 Mich. 188 (7 N. W. 785, 40 Am. Rep. 465), and in *Colwell* v. *Britton,* 59 Mich. 350 (26 N. W. 538), that merely sharing in profits, where third persons have not been legitimately led to believe there was a partnership, does not create one as to them, unless there was one in fact. In both of those cases, however, the party sought to be charged as a partner received a percentage of the proceeds as a measure of compensation,—the one as rental, and the other as commission. Both come within the generally recognized exception to the rule laid down by a large number of authorities, that, as to third persons, profit sharing is conclusive as to liability."

In the present case it was claimed, and there was considerable testimony tending to show, that this profit sharing was in part payment for a loan. The instruction quoted followed the instruction that:

"I submit to you as a question of fact, to be determined from the evidence in this case, whether the defendants, Freud and McKinney, were doing business as copartners at the time the plaintiff sold and delivered his potatoes; and if you find that they were, and that the potatoes were sold, and as such copartners they purchased plaintiff's potatoes, then they are jointly liable. If you find it to be a fact, from the preponderance of the evidence in this case, that each of these defendants participated in the profits made from the manufacture and sale of the flour made from the plaintiff's potatoes, and that they were jointly interested as coprincipals in the purchase of the potatoes, and their manufacture into flour, and sale of the flour, they are jointly liable for the purchase price of these potatoes, even though there were no partnership relations existing between them in reference to this transaction."

The inference naturally to be drawn from the instruction that "participation in profits is some evidence," etc.,

is that, if there was difficulty in finding that they were jointly interested as "coprincipals," the fact that they participated in the profits was sufficient evidence of partnership to sustain a verdict in the case. In view of the defense it clearly was not, if the defendants' testimony was believed.

We think the court was too strict in refusing to permit the defendants to testify what relations existed between them. The witness Keenan was permitted to testify to conclusions in relation to Freud's interest in the business, although it was not shown that he had any means of information. McKinney certainly knew whether the business was carried on by himself and Freud after May 1st, and whether the corporation was interested in it, but his testimony was rigidly excluded, upon the ground that it involved a conclusion of law. He certainly knew how long the corporation ran the business, and when it ceased, and whether it had an interest in the business in 1897. We think that the defendant Freud was entitled to the benefit of an explicit denial of interest in the potatoes.

Many other questions are raised, which do not call for consideration.

The judgment is reversed, and a new trial ordered.

MOORE, LONG, and GRANT, JJ., concurred. MONTGOMERY, C. J., did not sit.