MAGDALENA EDINGER, KATHARINA CHRISTIAN, AND ANNA MAACK v. ANDREAS HEISER AND ELIZABETH HEISER.

*Sale of farm by children— Who inherited it through their mother—And conveyed it to their father in anticipation of its sale by him—He agreeing to preserve the principal for them, subject to its use during his life-time —Which sale was made and six hundred dollars of the proceeds divided among the heirs—Creates a trust valid and enforceable—Second wife, who, with knowledge of children's rights, receives a portion of the trust fund, cannot be considered a good-faith holder—Omission of a brother, who was without the jurisdiction of the court, as a party to a bill to enforce such trust, a matter of form—And he having, prior to decree, approved the proceedings in writing, filed in the case—Will be made a party in appellate Court by amendment.*

1. Complainants' mother died intestate, leaving them and a younger brother her sole heirs at law, all having attained their majority. She was the owner of a farm and some personal property, and had been the managing head of the family. The deed of the farm was taken in her name, because she willed it so, she paying a part of the purchase price from money received on the sale of a house and lot owned by her, and that received from an absent son, securing the balance by a mortgage, which she afterwards paid. After her death complainants, in anticipation of the proposed sale of the land, deeded the farm to their father, upon his agreement to hold the money received on such sale in trust for them, subject to its use by him during his life-time, as also the money realized on a sale of the personal property. The sale was made, and $600 of the purchase price divided among the heirs, and the balance of the trust fund was held inviolate by the father until his marriage with his co-defendant, to whom he gave his note for $1,000 to induce such union.

    *Held,* that the real transaction was a sale of the farm by the children, who intrusted the proceeds to their father's keeping, he to enjoy its use, but to preserve the principal intact for them, and that such a trust is valid and enforceable.

    *Held,* further, that the second wife, having ample knowledge of complainants' rights, cannot be considered a good-faith holder of a mortgage representing a portion of the trust fund, and which the father had assigned to her.

2. Three heirs filed a bill to reach a trust fund held by their father, and a brother, equally interested with them, whose whereabouts were unknown, and who it afterwards appeared was not within the juris-

diction of the court, was not made a party. Before decree he examined the proceedings, and filed a sworn statement in the case, approving the suit and consenting to a decree substantially as thereafter made.

*Held*, that he could have been made a party on the hearing in the court below, and such amendment will be made in the appellate Court in the interest of justice and equity.

Appeal from Saginaw. (Gage, J.) Argued May 11, 1886. Decided October 7, 1886.

Bill filed for an accounting by an alleged trustee, and to carry out the trust. Defendants appeal. Decree affirmed. The facts are stated in the opinion and head-notes.

*D. W. C. Gage*, for complainants:

This is a much stronger case for complainants than *Calder v. Moran*, 49 Mich. 14, where the land was converted after eleven years' holding.

No writing is required for a trust in such property: *Id.* 17.

At common law a trust in land was created by parol: Perry, Tr. §§ 75–7; and the common law prevailed in Ohio at time of this transaction: Id. § 78 (note 4).

If the transaction was void under the statute of frauds of Ohio, it was saved by part performance: Kerr on Fraud and Mistake, 135–6; but the statute does not apply to a conveyance obtained by fraud: *Linsley v. Sinclair*, 24 Mich. 380; and this is a trust so arising, and the statute, nor want of written evidence of the agreement, cannot prevent its enforcement in equity: Perry, Tr. § 226.

Gross inadequacy of consideration is *decisive* evidence of fraud and ground for cancelling the transaction: Kerr on Fraud and Mistake, 186–188, and notes.

The property was obtained by Heiser in violation of his agreement with complainants, and by fraud and parental influence, and he was properly decreed to hold it in trust: Perry, Tr. § 201.

As to general doctrine of parental influence, see 1 Story, Eq. Jur. §§ 309*a*, 309*b*, 310.

As to general doctrine of undue influence arising from friendly and confidential relations, see Perry, Tr. § 208.

The burden is on Mrs. Heiser to show that she was a *bona fide* purchaser, or derived title from one (*Ellison v. Kittridge*, 45 Mich. 475), and the payment of a valuable con-

sideration, aside from the recital in the mortgage assignment: *Shotwell v. Harrison,* 22 Mich. 410.

The decree should be affirmed in the absence of such proof, and the contrary affirmatively appearing : *Hull v. Swarthout,* 29 Mich. 249 ; *Kinyon v. Young,* 44 Id. 339 ; *Butler v. Hogadone,* 45 Id. 390.

*W. H. Sweet* and *W. A. Clark,* for defendants :

The omission to join Andreas Heiser, Jr., is fatal to a recovery : Story, Eq. Pl. §§ 72, 75, 76 ; Perry, Tr. §§ 875, 881; *Westcott v. Minnesota Mining Co.,* 23 Mich. 152.

Complainants on their own showing were not entitled to a decree for the *entire* subject-matter involved : Story, Eq. Pl. §§ 40–3 ; 1 Barb. Ch. Pr. 37.

The complainants claim no right to the trust fund until their father's death, hence the decree for a trustee of the property is unwarranted : How. Stat. § 5589 ; 1 Barb. Ch. Pr. 37 ; Perry, Tr. §§ 275, 817.

At common law and under the Ohio statute this parol trust is void : *Crane v. Hardy,* 1 Mich. 56, 63 ; 2 Story, Eq. Jur. §§ 971–2 ; Stat. 29 Charles II. chap. 3, § 6, p. 9.

Resulting trusts being abolished in Michigan, the bill rests solely on the express parol trust claimed to have been created before the land was deeded to the father : How. Stat. § 5569.

Complainants have no equity, the simple repudiation of a parol promise not being a fraud relievable in that court : *Brown v. Bronson,* 35 Mich. 415.

The mistake claimed must be one of fact, and mutual : Brown, Fr. §§ 94–6 ; 3 Greenl. Ev. §§ 361–3 ; *Whiting v. Gould,* 2 Wis. 583 ; *Wilton v. Harwood,* 23 Me. 134.

As to mistake of law not being relievable, see *Storrs v. Barker,* 6 Johns. Ch. 169 ; *Lyon v. Richmond,* 2 Id. 51 ; *Shafer v. Davis,* 13 Ill. 395 ; 1 Story, Eq. Jur. §§ 113, 116, 137, 138 ; *Hunt v. Rhodes,* 1 Peters, 13–17.

Evidence contravening the absolute deed and adding a parol condition thereto, changing the title conveyed, is inadmissible : *Brown v. Bronson,* 35 Mich. 415 ; *Levy v. Brush,* 45 N. Y. 589 ; *Wheeler v. Reynolds,* 66 Id. 227 ; *Webb v. Rice,* 1 Hill, 606.

Parol evidence is inadmissible to establish a trust : 2 Story, Eq. Jur. § 972 ; *Steere v. Steere,* 5 Johns. Ch. 1 ; *Jackson v. Moore,* 6 Cowen, 706.

The general rule applies to such a case : 3 Greenl. Ev. § 360 ; *Mead v. Steger,* 5 Porter (Ala.), 505 ; *Webb v. Rice,* 1 Hill, 606.

There can be no implied or resulting trust from a deed containing an express declaration that the conveyance is for the use of the grantee, as in this case :[1] 2 Story, Eq. Jur. §§ 1197–1199.

In order to set aside the deed, the influence must have amounted to coercion, destroying free agency :[2] *Gardner v Gardner*, 22 Wend. 526 ; Redfield on Wills, 318; *Bowen v. Lockwood*, 26 Mich. 441 ; *Latham v. Udell*, 38 Id. 242.

To enforce a trust for fraud, the fraud should be distinctly alleged and proved : Brown, Fr. § 96; *Miller v. Cotten*, 5 Ga. 341 ; *Robson v. Harwell*, 6 Id. 589.

MORSE, J.   In this case the complainants allege in their bill of complaint that Magdalena Edinger, Katharina Christian, and Anna Maack were the daughters of the first wife of the defendant Andreas Heiser, and that their said mother died on or about the seventeenth day of February, A. D. 1880, at Middlebury, Ohio.   At this time they and their brother, Andreas Heiser, Jr., were all of the age'of twenty-one years and upwards, and the only heirs at law of their mother; that their father was living at the time of her death, and then seventy-one years of age; that their mother died intestate, and the owner in fee of about forty acres of land in said town of Middlebury, of the value of $3,700, which, under the laws of Ohio, descended to them and their said brother in equal shares.

That their father and mother resided on said land at the time of her death, and that the mother had upon said farm personal property belonging to her, of the value of $600.

That immediately after her death their father began importuning the children to convey said land and personal property to him, giving many reasons therefor.   He claimed that he was left destitute in his old age, without means ; that he was unable to work; that it mortified him to have it

---

[1] "To have and to hold the premises aforesaid to the said grantee, his heirs and assigns; so that neither of the said grantors, or our heirs, nor any other persons claiming title through or under us, shall or will hereafter claim or demand any right or title to the premises, or any part thereof, but they and every one of them shall by these presents be excluded and forever barred."

[2] See *Maynard v. Vinton*, 59 Mich. 140 (head-note 3).

known he owned no property; that he wanted the property sold and the avails invested at interest, so that he could have the income thereof for his support; that he did not wish to live alone, he was too old to marry again, and only wanted to live with his children in town; that he would not use up, risk, or impair the principal, and that the said principal sum should be safely held and preserved for them and go to them at his death.

That complainants, relying upon such representations and, promises, agreed to execute the necessary papers to carry out their father's wishes and undertakings. They were ignorant of business matters, and their father applied to one J. M. Watson, a justice of the peace of Berea, to get his advice and to have him draw the necessary documents to carry out the agreement. They relied upon their father's representations as to the integrity and competency of said Watson, they being strangers to and unacquainted with said Watson, and ignorant of his honesty or his competency to advise them and execute the necessary papers.

They, with their father, stated fully to said Watson the arrangement between them, and were informed and advised by him that the proper thing and the only necessary thing to do in order to carry out their arrangement was for the children to execute and deliver to their father a quitclaim deed of the premises, and give him possession of the farm and the personal property, which, acting under Watson's advice as aforesaid, they did.

They further allege that about March 17, 1880, their father sold said land for $3,700 to one Vincent Greiff, receiving $2,000 in cash, and taking back a mortgage upon the premises for $1,700, payable in three years, with annual interest at 6 per cent. He also sold the personal property for about $600. He paid to each of his said children $150 out of the money he received from Greiff for said land.

That soon thereafter their father removed to East Saginaw, and lived with complainant Magdalena Edinger until about October 10, 1881. In September, 1881, he purchased fractional lot 10 in block 91 of Hoyt's plat of East Saginaw, and

.paid therefor $1,100. He took the deed in the name of said Magdalena Edinger, she assenting thereto, at his solicitation, as being her portion of the said principal that he had derived from the aforesaid land and personal property by means of the conveyance of the same to him by the children.

They further aver that about the fifteenth day of September, 1881, he contracted with one Elizabeth Miller to marry her. She was a widow, about forty-five years of age, with six children, three or four of whom were minors and dependent upon her for support. To induce her to marry him he gave her his promissory note for $1,000, and agreed to pay her that sum. He married her October 10, 1881.

About November 18, 1881, after his marriage and the giving of said promissory note, the existence of such marriage and note being unknown to the said Magdalena Edinger, her father represented to said Magdalena that he was about to go to Cleveland, Ohio, and Louisville, Ky., to visit his children residing there; and that he feared that when he told them of the purchase of said lot in her name they would think it was more than her share of said principal money, and that he was not dealing justly and equally with all the children. For this reason he requested her to give him a mortgage upon said lot for the amount of said purchase price, $1,100, which she was induced to do by his importunity and parental influence.

Complainants then aver and charge that he has put said mortgage on record; that he did not go, and did not intend to go, to visit the other children as he represented to Magdalena, but made the pretense of going to deceive her and obtain said mortgage. .

Since the marriage of their father with said Elizabeth Miller, the complainants aver that he has lived with her and supported her, and to a great extent provided for her family, out of the moneys so obtained by him from their deed as aforesaid; that she has acquired complete and entire influence and control over him; and that she married him to obtain, absorb, and acquire the said property in his possession or

under his control, which is all he had or has, and which in equity belongs to complainants.

The complainants further charge that before said contract of marriage, and before receiving said note, the said Elizabeth Miller was informed of and knew fully the understanding and agreement under which the said Andreas Heiser acquired, obtained, and received the property belonging to complainants, and that all the property and money he had at the time of his said marriage to her was their property and money, and that he had no right to the principal thereof, but was entitled only to the income for his support; that their father, acting under the influence of his said wife, the defendant Elizabeth Heiser, purchased and paid for a lot near said East Saginaw, paying $550 therefor, and taking and recording the deed of the same in the name of said Elizabeth Heiser.

That said Andreas Heiser is threatening to sell, and offering for sale, the mortgages aforesaid,—the one upon the old place in Ohio, and the one given by said Magdalena to him,—and intends to use the whole or a part of the money to be obtained from the sale or discount of these mortgages in building a house upon said land so purchased in the name of his present wife.

That complainants recently first learned that the proper and necessary papers to carry out the understanding and agreement with their father were not drawn by said Watson, and that their money in the hands of their said father is insecure and unsafe.

That the said Magdalena, for herself and the other complainants, has frequently remonstrated with her father and his wife in regard to his and her acts and doings, and requested him to return said money to said complainants or secure it to them; but he has refused to do so, and he and his wife claim and say that the property was deeded to him, "it was now in his name," and he could and would do as he pleased with it, and complainants were powerless to help themselves in the premises.

Complainants further allege that said agreement has never been changed by their knowledge or consent, and that the

giving of the quit claim deed, without any condition or defeasance, was done by reason of the mistake or incompetency of the said Watson, under whose advice and direction the parties acted; and that the neglect to carry out said agreement, and to effectuate it by the drawing of proper papers to secure said money and property to the complainants upon the death of their father, operates as and is a fraud upon them and their rights.

That said Andreas Heiser and his wife are conspiring together, and intend to convert said mortgages into money and place the same beyond the reach of complainants; and that they fear their moneys will be spent and squandered, and their father left without means of support, and they be called upon and obliged to take care of him at their own expense.

They pray, therefore, that defendants may come to an accounting touching said moneys, mortgages, and lots, or any property which has been received or derived from the moneys of complainants; that said moneys in the possession of their father or his wife, said mortgages, and said lot standing in her name, and any other property in the hands of either of them derived from the property conveyed by complainants to him, may be decreed to belong to complainants and be conveyed and transferred to them, Magdalena offering to convey her title to the lot in her name so that the others will be co-tenants with her, and the complainants further offering to secure to their father the income from, or interest upon, said property so restored, payable semiannually, for his support during his life.

They also pray that the mortgage executed by Magdalena be canceled and released, and for general relief; also for an injunction to prevent disposal or incumbrance of the lots and property.

. The defendant Andreas Heiser admits the sale of the premises by him for the price named in said bill, and that at the time of his first wife's death the title of the premises was in her name, but denies that it ever belonged to her, or that she earned it or any portion of it; alleges that he came

to this country from Germany, poor and alone, and by his industry and economy earned money enough to send for and bring his family over here; that all the property was the proceeds of his own toil and accumulations; that his wife brought him no dowry, and never contributed any money or aid towards the acquiring of the farm in Ohio; nor did his children help him any in accumulating his property; avers that his wife owned no personal property when she died; it was all his, and he sold it for $430.

He denies that he importuned the children to deed to him, but that they did so of their own accord, he paying the three girls $150 each in full for said deeds.

He admits that Watson drew the quitclaim deed, and no other paper, but denies that said Watson was advised with by himself or any of the complainants as to any arrangement or agreement between them, or that said Watson advised them what papers were necessary to be drawn. He denies *in toto* any agreement or understanding whatever as claimed in complainants' bill, or anything of a like nature. The only agreement was that they should execute the quitclaim deed, as they did, for $150 each. He further avers that none of them since that time have ever claimed any interest in said property, and that the first he ever learned of such pretended agreement or any claim upon their part to his property was when he heard read the bill of complaint in this cause.

He alleges, as the reason that the deed of the Ohio land was in his wife's name, that, after having acquired a moderate competency and a home, he thought he would visit his friends in Germany. His wife did not wish to go, and, in fear of possible accident to himself on his journey, he thought it best to have his wife hold the title to this land, so that in case he did not return she and the family would be provided for. By agreement with his wife the title was so placed. He finally concluded not to go to Germany, but, fearing no calamity, the title was not changed, and the sudden death of his wife from apoplexy left the title remaining in her, when in equity the land belonged to him.

His daughters advised him to sell the place, convert it into money, and thereafter board with them, with which one he might please, paying them for his board. He thought he would do so, and for that reason sold the farm.

He denies that he bought lot No. 10 and placed the title in the name of Magdalena as her portion of the estate, but avers that at her request he loaned her the $1,100 to buy the same, because she wished to purchase it, as it adjoined property already owned by her; avers that she gave him the mortgage to secure him for the loan, and not for the reason alleged in the bill.

That from the insults heaped upon him by Magdalena and members of her household, he was unable to live there any longer, and admits that he married Elizabeth Miller, and gave her his promissory note for $1,000 as an inducement to such marriage.

He denies purchasing the other lot, and says in relation thereto that the first and only payment made upon the same —to wit, $200—was made by the said Elizabeth Miller out of her own money, and not from any means furnished by him or coming from the proceeds of the Ohio land; that it was agreed between him and his said wife, Elizabeth, that he should build a house upon the land, and have a life-estate therein, and that under such arrangement he aided the said Elizabeth in putting up a small dwelling-house upon said premises.

He avers that said complainants well know that all of said Ohio property was accumulated by his toil and economy, without any aid from them, or either of them, or any other person.

He denies all the allegations of said bill as to his deceiving the said Magdalena, or any of the complainants, in any way, shape, or manner; avers that for many years he has had no parental influence over them, and that they have no love for him, and no interest in his affairs except such as is prompted by their avarice and cupidity.

He denies that the said Elizabeth married him to absorb his property, or that before said marriage she had ever heard

of any such agreement or arrangement as claimed by complainants, or that they laid any claim to any of his property.

He denies that Magdalena ever remonstrated with him as to his disposition of such property, or requested him to desist from discounting said mortgages; admits that he offered to dispose of the Greiff mortgage (but no other) for the purpose of meeting his liabilities and current expenses, but not to place the same in the hands of his wife, who, he avers, has property in her own right; denies all conspiracy charged in said bill, and submits that the property he holds is his own, to dispose of as he chooses.

Under this issue a large volume of proof was taken, which, with the exhibits accompanying the same, was submitted to the Saginaw circuit judge, sitting in chancery; a portion of the testimony of Magdalena Edinger and Andreas Heiser being taken in open court, as in a suit at law.

The said circuit judge, upon such hearing, made a decree that by the agreement between complainants and their father a trust was created in the avails of said farm, the terms of which trust were that said Heiser was to take charge of said fund and keep it out at interest, such interest to go to him for his support and maintenance during life; and if the interest was not sufficient, then so much of the principal sum as was necessary was also to go to him for that purpose; the principal sum of $3,700, or so much as should remain at his death, to go to the children *pro rata.*

That Heiser entered upon such trust, but had violated it by claiming said fund as his own, and appropriating a portion thereof for purposes not contemplated by said trust.

That said trust be removed from said Heiser. That the property then remaining of such trust funds, at the date of said decree, was $979.46, in the hands of Fred B. Sweet, the former register of said court; the mortgage and note made by said Magdalena Edinger to said defendant Andreas Heiser, and interest upon the same, assigned to and then held by the defendant Elizabeth Heiser; and a judgment against Michael O'Donnell for $150 and costs.

It was ordered by said decree that Richard Luster be ap-

pointed a trustee of said property, upon filing a prescribed bond to the parties in interest, to take possession of the same, and to account semi-annually, and report to the court his doings in the premises.

The court further adjudged that the defendant Elizabeth Heiser was not a *bona fide* holder of the mortgage and note, and she was ordered to assign and deliver the same to said trustee, or the decree to operate as such assignment.

Andreas Heiser was also ordered to transfer the O'Donnell judgment to the trustee, and Sweet was directed to pay the money in his hands to the trustee.

The trustee was then directed to make the best and most proper use and investment of this trust fund, and pay the interest derived from the same quarter-yearly to said defendant Andreas Heiser, for his support during his life; and if said interest should not be sufficient for his proper care and maintenance, to pay him from said principal so much as may be necessary, in addition to such interest, to support him according to his former life and standing, with leave to apply to the court for further directions; and upon the death of said Andreas Heiser, after paying his funeral expenses, to pay the fund remaining to the complainants and Andreas Heiser, Jr., share and share alike.

After a careful examination of the evidence taken in the cause we are inclined to let this decree stand. The parties to the controversy cannot speak or read English with any fluency, and some of them cannot read English print or writing at all. As their names imply, they are Germans. Because of their inability to fully comprehend or speak our language their testimony is not as intelligently or satisfactorily given as we might wish in order to get at the truth.

We are satisfied, however, principally from the testimony of disinterested witnesses living in Ohio, who knew the family when the first Mrs. Heiser was living, and the circumstances of the acquisition of the property there, and the selling of it, that the children are nearly right in their version of the transaction.

It is apparent from the testimony of Mr. Greiff, who sold

the farm to Mrs. Heiser, and who bought it back after her death, and the other neighbors there, that the wife was the managing head of the family; that she directed the labors of all of them, sold the produce, made the purchases, and kept and controlled the funds; that the farm was put in her name because she desired and willed it so, and not for the reason assigned by Heiser; that she bought the farm, paying part in the first place from the proceeds of a house and lot owned by her, and some money contributed by her son John, who was in the army, and running in debt for the balance by mortgage and otherwise, which she afterwards paid.

It is also evident from the testimony of the same parties, some of whom were present when the agreement was made, that the father promised and agreed with the children, as they claim, that, if they would deed to him, when he sold the place the principal of the moneys should be kept for and be theirs, and that he would only use the interest, and upon such promise and agreement they deeded.

Mr. Greiff, to whom the land was sold, testifies:

" When I bought that farm back again I bought it from the children, and then the agreement said he can use the interest of the money as long as he lived, but the capital goes back to the children after his death; and he said he would not use up the capital. He wanted to make some money to the capital from the interest. Then he said he will never touch the capital; he would not disturb the money away from the children."

"I heard the first conversation between Magdalena and Andreas Heiser when I bought the farm. It was at Watson's office, Berea. I gave it before.

" Mrs. Edinger said he can use the interest of the money as long as he lived, but not the capital. Then she told him, 'You need not fool us out of that money, father,' leaving the money in his name. 'You never had any money before. Don't you cheat us out of that money, father; we give you that much credit.' He says, 'I will never destroy that money and keep it away from my children. I want to make some more money from the interest. I will not use up all the interest.' Mr. Watson was present."

Watson, the justice of the peace, who drew the quitclaim deed, while he denies that there was any talk in his office or .

to him about drawing up an agreement, or incorporating it in the deed or any other paper, swears positively that—

"The old gentleman stated to them [three of the children] that he could live on the interest of the money, and it was understood by me that the old gentleman then agreed with the children there present that the interest would be all that would be necessary for his support, and that he would only use the interest."

"About his only using the interest was spoken of and agreed upon both at my office on that day and also when we met and made the deed at Cleveland."

It is also clear from the whole of the evidence, including that of the defendant Andreas Heiser, that he did not meddle with the principal money or manifest any disposition to do so, to the detriment of the children's interest therein or in violation of this agreement, until he wanted to marry Mrs. Miller, and found it necessary to buy her consent thereto with the $1,000 note.

It follows, then, that the real transaction was that the children sold the farm, and intrusted the proceeds thereof to the keeping of their father, upon the express understanding and agreement that he should only use up the interest, and that he would preserve the principal intact. He accepted the trust, but has violated it.

It is contended by defendants' counsel that the bill cannot be maintained, and should be dismissed, because Andreas Heiser, Jr., a brother of complainants, is equally and jointly interested with them in the trust, and is a necessary party to the suit.

It appears from the evidence that his whereabouts were not definitely known when the suit was commenced. It was necessary to proceed at once to prevent the wasting of the entire fund. He was not within the jurisdiction of the court when the bill was filed. There was no reason for making him a defendant, as his interests were identical with those of the complainants. Besides, his interests were not in any manner prejudiced by the proceedings; on the contrary, the purpose and prayer of the bill was in his interest.

Before decree the said Andreas Heiser, Jr., came to Saginaw, and examined the proceedings, and filed a paper in the cause, wherein he stated under oath his entire approval of the suit and the steps taken therein by his sisters, and that he consented to and desired a decree to be made in the cause substantially as it was made, and for the ends and purposes of such desire subjected himself to the jurisdiction of said court.

We see no difficulty in the matter. It would have been competent for the court to have allowed an amendment of the bill of complaint upon the hearing making him a party complainant, and such amendment will be considered here as made, as the decree is so drawn as to give him the same and all the relief he could have gained had he been a party from the beginning. It does not alter in any way the standing of any party to the proceeding, or prejudice the rights of any of the complainants or defendants.

The omission to make him a party is a mere matter of form, not affecting in any wise the merits of the controversy; and as he has put himself on record in the court as satisfied with the proceedings and the decree in the case, "the same as though I had been and was now a complainant with them in said cause," equity and justice demand that the bill shall not be dismissed for a mere technicality, and another large bill of costs be thereby made to the trust estate, or else the fund wholly lost to the children, to whom it evidently belongs.

It is also argued that, if a trust was created, it was in parol and relating to realty, and therefore void; that the quitclaim deed absolutely and unconditionally conveyed the land; and that the parol promise made by the father before obtaining the deed, that when he sold it the purchase price should be held by him in trust, was incompetent in proof, and not enforceable even in equity, because such promise contravened the absolute deed, and added by parol a condition thereto, changing entirely the right and title conveyed thereby.

But the claim in the bill and the evidence is that not only

was this arrangement talked over and agreed upon before the children deeded to the father, but the deed was also made in contemplation of the bargained sale to Mr. Greiff, and when the money was paid over by Mr. Greiff, $600 was taken out and divided among the children, with the distinct understanding and agreement that the money derived from the sale of the personal property on the farm should be added to the money and mortgage received from the farm, and the principal thus formed be held in trust by the father for the children, he only to use the interest.

It is the same, in my opinion, as if the children had themselves deeded direct to Greiff and received the money into their own hands, and then afterwards placed it in the keeping of their father on the same terms as he now holds it,—to use the interest, but to reserve the principal for them at his death.

There is no question but such a trust is valid and enforceable. See Perry, Tr. § 86, and cases cited: *Chadwick v. Chadwick*, 59 Mich. 87; *Leland v. Collver*, 34 Id. 418; *Ellis v. Secor*, 31 Id. 186.

The defendant Elizabeth Heiser cannot be considered a good-faith holder of the Magdalena Edinger mortgage. According to her own testimony she had ample knowledge of the rights of the children in the same before its assignment to her.

The decree of the circuit court in chancery for the county of Saginaw must be affirmed, with costs against both defendants.

The other Justices concurred.