ROSSMAN *v.* MARSH.

ON REHEARING.

MORTGAGES—DEFICIENCY—TRUSTS—ASSUMPTION OF LIABILITY.
    In suit to foreclose a mortgage on a real estate subdivision and
    for deficiency against members of a so-called syndicate, who
    were beneficiaries under a declaration of trust but who had not
    expressly assumed payment of the mortgage, decree denying
    deficiency decree against beneficiaries is affirmed by an equally
    divided court.

Appeal from Jackson; Simpson (John), J. Submitted October 12, 1938. (Docket No. 61, Calendar No. 40,081.) Decided February 2, 1939. Submitted on rehearing April 4, 1939. Decided June 5, 1939.

Bill by R. H. Rossman, receiver of Union & Peoples National Bank, against Howard R. Marsh and others to foreclose a mortgage on a real estate subdivision. Separate cross bills by defendants Theodore A. Hemminger, Robert Rumler, Mae E. Garfield, and others against codefendants Howard R. Marsh and others for subrogation and other relief. From decree of foreclosure, appointing successor trustee and denying deficiency against any of defendants except successor trustee and granting cross-plaintiffs rights to release of lots upon payment of amount required by mortgage, plaintiff appeals. Defendants Town, Marsh, Hackett, Brown, Dunkerley, Cooley, Rumler, Hemminger, Detwyler, Huber, Parker, Kalmback, Bienick, and Garfield cross-appeal. Affirmed by an equally divided court on rehearing.

*Elmer Kirkby* (*Whiting, Kleinstiver & Anderson,* of counsel), for plaintiff.

*William H. Aubrey, Norman E. Leslie,* and *Bisbee, McKone, Badgley & Kendall,* for defendants.

## ON REHEARING.

BUSHNELL, J. Because of an equally divided court, the decree of the circuit court was affirmed in 287 Mich. 580. Rehearing was granted by this court on March 10, 1939, and the case was reargued. Reconsideration of the issues presented and the arguments of counsel do not indicate any reason for the departure from the views expressed in the reported opinion. On rehearing, the decree of the circuit court is again affirmed, with costs to appellee.

BUTZEL, C. J., and SHARPE and McALLISTER, JJ., concurred with BUSHNELL, J.

POTTER, J. The opinion in this case when first considered is reported in 287 Mich. 580. Rehearing was granted and the case resubmitted.

Many of the facts are stated in the former opinions filed.

The principal question in controversy is whether in purchasing, acquiring, and handling the real estate in question John F. Hausen acted solely as a trustee and the other defendants who contributed to the purchase and acquisition of the property were mere beneficiaries of such trust; or whether the arrangement among the syndicate members by which the title to such real estate was taken in the name of John F. Hausen, trustee, was a method of acquiring, handling, and disposing of the real estate for the benefit and profit of the contributors to the syndicate.

The former opinion omits the underlying syndicate agreement entered into between the contributors to this joint venture in pursuance of which agreement all subsequent action was taken. It quotes in full the declaration of trust by Hausen of August 30, 1927, made by him in pursuance of the syndicate agreement under which the title was agreed to be taken in Hausen's name, as trustee for the benefit of the syndicate members, and the declaration of trust quoted was filed. What was the original syndicate agreement? It was as follows:

"Jackson, Mich., Aug. . . . ., 1927.
"To John F. Hausen,
"Jackson, Mich.
"Dear Sir:
"I hereby subscribe the sum of $. . . . . . . . . to be paid at once, as my contribution towards the purchase from the National Union Bank, of Jackson, Michigan, of land described as follows:
"The east 77 acres of the east half of the northeast quarter of section number 32, town 2 south, range 1 west, consisting of 420 lots known as 'Hackett Park' excepting therefrom 48 lots which have been sold, numbered as follows: Lots 40 to 52 both inclusive, lots 131 to 135 both inclusive, lots 320 to 328 both inclusive, lots 239 to 244 both inclusive, lots 329 to 334 both inclusive, lots 414 to 420 both inclusive, lots 343 and 344, all according to the recorded plat thereof, subject to the rights of way of the public highways as at present located.
"I understand the purchase price is $30,000 and $10,000 is to be paid down, the remaining $20,000 secured by a first mortgage on the property.
"I understand the title to the property is to be taken in the name of the trustee for the benefit of myself and other subscribers to this trust.
"I further understand that the amount to be raised at this time is $16,000 of which $10,000 is to

be paid down as the first payment on the purchase price of the property and $2,000 is to be used in payment to the said John F. Hausen for the option which he has, the benefit of which he is giving to his associates in this enterprise; for the time and investigation he has made in securing the option and for the actual work and labor which will be required of him in superintending the development, cleaning up of the property, restaking the lots and building roads and his compensation as trustee and the balance of $4,000 is to be expended and used for paying the bills which will be incurred in developing, cleaning up the property, restaking the lots and building roads and in paying the interest on the mortgage and taxes and charges on the property in carrying it to a point where the revenue from the sale of lots will take care of the expenses from that time on.

"I further understand that within 15 days after securing title to said property from the National Union Bank, the said John F. Hausen will make and execute a declaration in trust in accordance with the prospectus this day shown me and cause the same to be recorded with the register of deeds of Jackson county, Michigan, and that he will also issue, within 15 days from the time he takes such title, a trust certificate to me, evidencing my interest in this syndicate and that there will be at least quarterly meetings, at which the trustee shall furnish to the members of the syndicate full and accurate information of all and sundry the doings of the trustee.

| "Names of subscribers | Amount subscribed |
|---|---|
| "John F. Hausen | $4,000 |
| "Howard R. Marsh | 4,000 |
| "Edward O. Marsh | 1,000 |
| "Dr. H. H. Brown | 1,000" |

The parties to this syndicate agreement were mutually interested in acquiring the real estate in question and selling it for profit. It apparently never

dawned upon any of the syndicate members that the venture might not be a paying one. They signed the original syndicate agreement which fixed the purchase price of the real estate, at $30,000; provided $10,000 was to be paid to the bank as a down payment on the real estate, that the payment of the remaining $20,000 was to be secured by a first mortgage upon the real estate, that the title to the property, in pursuance of such syndicate agreement, was to be taken in the name of Hausen, as trustee for the benefit of the subscribers, that $16,000 was to be raised at the time the syndicate agreement became operative, and of this sum $10,000 was to be paid to the bank, $2,000 was to be paid to Hausen for his option and for his time and investigation in securing the option and for work and labor which would be required of him in the future in superintending the development of the real estate, cleaning up the property, restaking the lots and building roads and as compensation to him as trustee. The balance of $4,000 was to be expended in paying bills to be incurred in developing and cleaning up the property, restaking the lots and building roads, and in paying the interest on the mortgage and taxes and charges on the property "in carrying it to a point where the revenue from the sale of lots will take care of the expenses from that time on."

This original syndicate agreement of August, 1927, provided *that within 15 days after securing title to the property* Hausen was to make and execute a declaration of trust "in accordance with the prospectus this day shown me;" cause the same to be recorded in the office of the register of deeds; and within 15 days issue trust certificates of title evidencing the interest of the syndicate members in the property. It was agreed between the parties there should be at least quarterly meetings at which the trustee would

furnish the members of the syndicate full and accurate information of all and sundry the doings of the trustee.

The parties subscribing this original agreement, and the amounts contributed by each, were: John F. Hausen, $4,000; Howard R. Marsh, $4,000; Edward O. Marsh, $1,000; and Dr. H. H. Brown, $1,000.

The property was acquired by deed from the bank to John F. Hausen, trustee, who, as such, executed the mortgage in question; and on August 30, 1927, Hausen made and executed a declaration of trust. It provided the title to the property, subject to the mortgage, was to be held by Hausen for the benefit of the parties contributing to its acquisition proportionate to the amount each contributed to the fund represented by the subscribers' agreement for the purchase and development of the property. At the time of this declaration of trust, the amount subscribed by each was: Howard R. Marsh, $4,000; E. O. Marsh, $1,000; Thomas E. Hacket, $1,500; Horatio A. Brown, $1,000; Susan A. Hausen, $1,500; John F. Hausen, $5,000; Arthur S. and Ann E. Dunkerley, $1,000; and Don Town, $1,000.

In this declaration of trust, Hausen agreed with the beneficiaries "to sell and convey in my name as trustee, the above described lots as purchasers are found for them, and *at such price or prices and upon such terms and conditions as may be agreed upon in writing by a majority in interest of said cestui que trustent.*"

This declaration of trust also provided that Hausen "may when in my judgment it is advisable, borrow money as such trustee or mortgage the trust estate in my hands, it being understood that the moneys resulting from such loans if any shall become part of the trust estate." It also provided Hausen might accept other contributions from the

same or other contributors who might share in the venture.

It was contemplated the mortgage would be paid off by the sale of lots. It was also provided:

"that as trustee *I shall have the right to pay reasonable commission* to brokers and others who are instrumental in finding purchasers for the property, and I further agree to see that *meetings of the beneficiaries* of this trust are held from time to time."

On February 18, 1928, a supplemental declaration of trust was filed, signed by Thomas E. Hackett, E. O. Marsh, Anna E. Dunkerley, Don Town, John F. Hausen, Howard R. Marsh, and Arthur S. Dunkerley. This agreement scheduled the lots and fixed the prices thereon. It also provided:

"*We further agree that the prices above mentioned are the minimum prices* and that the trustee may of course sell the above lots at such minimum prices or any prices greater than the minimum prices, and said *cestui que trustent shall pay said trustee a commission* of 20 per cent. on the sale or resale price of each lot, which commission shall be due and payable to him out of the first moneys collected or received from the purchasers of said lot or lots and this agency and employment shall continue until the lots are all sold and the moneys for them collected."

This supplemental agreement provided *the trustee could sell the lots upon land contract,* upon such terms of payment of the balance of the purchase price as might seem to him proper and sufficient, at such rates of interest as might seem to him proper, and it recited:

"This declaration is made for the purpose of having *the undersigned specify the prices and terms*

upon which said lots may be sold by the trustee as required by the declaration of trust dated the 30th day of August, 1927.''

It recited that this declaration, when executed by a majority of the *cestui que trustent,* should constitute a declaration by them of the price or prices and the terms and conditions upon which such lots should be sold, and ''as *vesting in the said John F. Hausen, trustee, the right to sell said lots* at the minimum price or prices above mentioned on such terms of payment and rates of interest as may be satisfactory to him, the said trustee.''

Whether the arrangement entered into by the contributors to the syndicate constituted, (a) a pure business trust, (b) a partnership, or (c) a joint adventure, must be determined by the facts and the applicable principles of law.

(a) A trust is ''a confidence reposed in some other, not issuing out of the land, but as a thing collateral, annexed in privity to the estate of the land, and to the person touching the land, for which *cestui que trust* has no remedy but by subpœna in chancery.'' Lewin on Trusts (13th Ed.), p. 11.

This definition is adopted in 1 Perry on Trusts & Trustees (7th Ed.), p. 10, § 13.

A trust is a right, enforceable solely in equity, to the beneficial enjoyment of property the legal title to which is vested in another. 65 C. J. p. 212.

(b) The question whether or not a business organization is to be regarded as a partnership generally is held to depend upon the extent of control which the beneficiaries or stockholders of the trust possess in the management of the trust, as indicated by the terms of the declaration of trust; and, it has also been held, on whether the certificate holders have been associated thereunder for the purpose of

control. If the stockholders are given the power substantially to control the business, the trustees acting according to the direction of such stockholders, the organization is considered a partnership, regardless of whether the power in such stockholders is actually exercised, and even though there is a provision in the trust agreement to the contrary. 65 C. J. pp. 1088, 1089.

"Whether it creates the one or the other depends upon the way in which the trustees are, by virtue of the agreement, to conduct the affairs committed to their charge, and whether an association of the certificate holders, for the purpose of control, is provided. If the trustees are to act as principals and are to be free from the control of the certificate holders, a trust is created; but if they are to be subject to the control of the stockholders' association, or substantially so, as if such trustees were but managing agents, the arrangement constitutes a partnership." 47 C. J. p. 646.

(c) When the agreement provides that both or all the parties thereto shall contribute money to be used in the purchase of lands, in the absence of some special provision of the contract indicating the parties intended to assume some other relation, the arrangement has almost invariably been construed to be one of joint adventure so as to give each of the parties a share, not only in the profits of the venture, but also an interest in the property from which the profits are to be derived, and the parties thereto are liable, not only as between or among themselves for an accounting for profits and the sharing of losses, but to third parties for debts contracted in the carrying on of the enterprise. 33 C. J. pp. 845–847.

It is immaterial in whose name the title to real estate purchased with funds put into a joint ad-

venture, or a contract to be performed by joint adventurers, is taken, for the use of the member's name gives him no legal rights he would not otherwise enjoy and subjects the property to no greater claim from his individual creditors than his interest therein can satisfy; nor do the other members suffer any diminution of their equitable rights to share in the property by reason of the fact that the legal title is taken in the name of one of them only. The holder of the legal title becomes a trustee for the benefit of his coadventurers, and is bound to deal with the property in that capacity. 33 C. J. pp. 858, 859.

Many analogous cases have been before this court and, though such syndicate agreements have in some cases been held not to constitute partnerships (*Beecher* v. *Bush,* 45 Mich. 188 [40 Am. Rep. 465]), they have uniformly been held to be joint adventures. *Alderton* v. *Williams,* 139 Mich. 296; *Fletcher* v. *Fletcher,* 206 Mich. 153; *Keiswetter* v. *Rubenstein,* 235 Mich. 36 (48 A. L. R. 1049); *Gleichman* v. *Famous Players-Lasky Corp.,* 241 Mich. 266; *Johnson* v. *Ironside,* 249 Mich. 35; *Crowley* v. *McCullough,* 254 Mich. 362; *Holbrook* v. *Blick,* 256 Mich. 396; *Polk* v. *Chandler,* 276 Mich. 527.

A joint adventure "may be defined as an association of two or more persons to carry out a single business enterprise for profit." *Fletcher* v. *Fletcher, supra,* citing Rowley on Partnership, § 975, and 15 R. C. L. p. 500.

"A 'joint adventure' is defined as 'an association of two or more persons to carry out a single business enterprise for profit.' *Fletcher* v. *Fletcher,* 206 Mich. 153. See, also, *Alderton* v. *Williams,* 139 Mich. 296. While, under the present state of the law, courts do not treat a joint adventure as in all respects identical with a partnership, the contractual

relations of the parties and nature of their association are so similar and closely akin to a partnership that it is commonly held their rights and liabilities are to be tested by the same rules that govern partnerships." *Keiswetter* v. *Rubenstein, supra.*

A substantially similar position was taken by the court in *Gleichman* v. *Famous Players-Lasky Corp., supra.*

The parties to the syndicate agreement in controversy did not enter into it for the purpose of losing money. They formed the syndicate and acquired the property for the purpose of making a profit. No losses were contemplated. The syndicate agreement did not provide specifically for losses. It was not necessary to show the syndicate agreement made a provision for losses. *Dutcher* v. *Buck,* 96 Mich. 160 (20 L. R. A. 776); *Keiswetter* v. *Rubenstein, supra.*

John F. Hausen was not to act as trustee free from the control of the members of the syndicate. They authorized the purchase of the real estate from the bank; they agreed upon the purchase price thereof; they specified the amount to be paid down; they provided the title to the real estate was to be taken in the name of the trustee for the benefit of the subscribers to the trust; they provided the trustee should issue trust certificates to each of them evidencing their interest in the syndicate; they stipulated at least quarterly meetings of the syndicate members should be held; they fixed the price to be paid to Hausen for his option from the bank; they provided $4,000 was to be spent in cleaning up and developing the property, restaking the lots, building roads, and paying the interest on the mortgage; they contributed the capital to the syndicate; they provided the balance of the purchase price above the down payment of $10,000 be secured by a first mort-

gage upon the real estate, and the mortgage here involved was made in pursuance of this syndicate agreement; they provided the trustee should execute a declaration of trust; they fixed the price at which the lots were to be sold; they determined whether or not such lots should be sold on land contract; they vested in the trustee the authority to sell and convey title to the lots to purchasers; they fixed the amount of compensation which he, as the selling agent of the syndicate, was to have for the sale and disposition of the lots in question and for the resale of the same; they were at all times in position to enforce the syndicate agreement; they could compel Hausen, as trustee, to account; and, by reason of being associated together in a joint adventure in pursuance of this syndicate agreement, a fiduciary relation existed between the members of the syndicate, which of itself conferred upon the court equitable jurisdiction to hear and determine all controversies arising between them. *Polk* v. *Chandler, supra.* In view of the undisputed facts, Hausen, as trustee, was not to act free from the control of the certificate holders, but was subject to the control of the persons who contributed to the joint adventure in all matters pertaining to the acquisition of the property, the giving of the mortgage, the manner in which the title should be held, the development of the property, the fixing of the price at which the lots were to be sold, and the compensation which he, as selling agent of the syndicate, was to have. He was in fact the general agent of the syndicate, authorized by the syndicate agreement to act for and in the interest of all members thereof in the acquisition, development, sale and disposition of the real estate in question.

It is claimed the original syndicate agreement of August, 1927, was not signed by defendants. The

agreement has been returned to this court. It purports to have been signed by the parties whose names are appended thereto as above stated. It is undisputed it was signed by Hausen. Whether it was signed by all of the defendants or by any of them, it cannot be claimed it is not a correct memorandum of the agreement between the parties evidencing the understanding between them, which subsequent members of the syndicate assented to, in pursuance of which the option of Hausen on the property was exercised, the land acquired in his name as trustee for the use and benefit of the syndicate members, which agreement was carried out by the parties, the deed taken, the mortgage executed, and the profits of the venture divided. The parties to the agreement furnished the money, fixed the prices at which the property should be sold, provided for the payment of commissions on sale, for the improvement of the property, and for a division of the profits. It is immaterial under the circumstances whether this syndicate agreement was signed by any or all of the parties defendant. It is an authentic memorandum of the agreement between the parties assented to and carried out, and, having been entered into, recognized, and performed or partially performed, it is not within the statute of frauds.

*Nester* v. *Sullivan,* 147 Mich. 493 (9 L. R. A. [N. S.] 1106), which is the basis of the contention usually made that contracts of this kind are within the statute of frauds, is distinguishable upon the facts. And if it holds that such an agreement as was made between the parties here, when wholly or partially carried out, is within the statute of frauds, it has been overruled. The great weight of authority is to the effect that the statute of frauds does not apply to a parol agreement creating a joint adventure for

the purpose of dealing or trading in, or purchasing and selling, lands on speculation or for profit, and not contemplating a transfer of title from one of the parties to the other or constituting either the vendor or purchaser of the other. 27 C. J. p. 221, citing cases from 29 jurisdictions.

"It is generally held that agreements to share profits and losses arising from the purchase and sale of real estate are not contracts for the sale or transfer of interests in land and need not be in writing." 27 C. J. p. 222, citing cases from 29 jurisdictions.

The statute of frauds contemplates a transaction between parties contracting with each other as principals, and this was not such a transaction. In this case, the defendant Hausen, as an agent, undertook to perform for himself and for the other defendants certain services. He was to be compensated therefor, and the parties were supposed to make a profit from the joint venture. Such an agreement is not within the statute of frauds. *Carr* v. *Leavitt,* 54 Mich. 540.

"When real estate in which several persons are interested is conveyed to one or more of them upon a parol agreement that it is to be sold by the grantees and the proceeds divided between the parties in accordance with their respective interests therein, such contract after the sale of the property is valid and enforceable, is not within the statute of frauds, and if the grantees after sale and receipt of the purchase price refuse to account to any and all persons in interest, they may maintain a bill for an accounting. *Carr* v. *Leavitt,* 54 Mich. 540; *Edinger* v. *Heiser,* 62 Mich. 598, 612; *Davis* v. *Gerber,* 69 Mich. 246; *Collar* v. *Collar,* 86 Mich. 507 (13 L. R. A. 621); *Petrie* v. *Torrent,* 88 Mich. 43; *Lasley* v. *Delano,* 139 Mich. 602; *Tuttle* v. *Bristol,* 142 Mich.

148; *Mullholland* v. *Patch,* 205 Mich. 490 (18 A. L. R. 468); *Bresee* v. *Robinson,* 236 Mich. 633. This is in accordance with the weight of authority. Browne, Statute of Frauds (5th Ed.), p. 355, § 268, and cases cited; 29 Am. & Eng. Enc. Law (2d Ed.), 897; 27 C. J. p. 221.

" 'As a general rule a contract relating to the disposition of the proceeds of land, in case of its sale, is not one for an interest in the land and may be enforced, though not in writing, after the land has been sold.' 25 R. C. L. p. 540." *Stewart* v. *Young,* 247 Mich. 451.

This is in accordance with the uniform partnership act. 2 Comp. Laws 1929, § 9850 (Stat. Ann. § 20.10); 20 A. L. R. p. 374; 25 A. L. R. p. 389.

Decree of the trial court should be modified so as to give plaintiff recourse in this foreclosure proceeding for deficiency decree against the syndicate members. In other respects, the decree of the trial court is affirmed. Costs to plaintiff.

Wiest, Chandler, and North, JJ., concurred with Potter, J.