# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* JOHN D. DOSPOY REVOCABLE LIVING TRUST.

KEVIN DOSPOY,

        Petitioner/Appellant,

and

MARK DOSPOY, DOUGLAS DOSPOY, and AARON DOSPOY,

        Petitioner/Appellees,

v

JOHN D. DOSPOY REVOCABLE LIVING TRUST, by Successor Trustee JOHN JEFFREY DOSPOY,

        Respondent.

UNPUBLISHED
July 14, 2015

No. 321304
Hillsdale Probate Court
LC No. 14-035056-TU

Before: SERVITTO, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

Petitioner Kevin Dospoy ("Kevin") appeals by right the probate court's order granting petitioners Mark Dospoy ("Mark"), Douglas Dospoy ("Douglas"), and Aaron Dospoy's ("Aaron") petition for interpretation and enforcement of a trust provision pursuant to MCR 5.501(C) and ordering that Successor Trustee John Jeffrey Dospoy ("the trustee") shall prepare a purchase agreement and sell real property owned by the John D. Dospoy Revocable Living Trust ("the trust") to Mark, Douglas, Aaron, and Michael Dospoy. We reverse in part and remand in part for further proceedings.

-1-

## I.  PERTINENT FACTS AND PROCEDURAL HISTORY

The trustee assumed the duty to administer the trust after settlor John Dospoy's ("Dospoy") death.  On March 6, 2013, Kevin, Mark, and Douglas[1] met attorney Zachary Rusk at the office of the trustee's attorney, Sara Lisznyai.  At that meeting, Rusk read aloud the provisions of the trust, including section 3.02, which states:

> 3.02 – DISTRIBUTION OF RESIDUE.  Upon my death the assets in this Trust shall be divided as follows:  (1) All horses and horse related equipment I give to in equal shares to [sic] my sons Douglas L. Dospoy and Mark Dospoy; (2) All of the remaining assets shall be divided equally between my sons, John Jeffrey Dospoy, Kevin J. Dospoy, Michael E. Dospoy, Douglas L. Dospoy, Mark Dospoy and my grandson, Aaron Dospoy.  My sons Douglas L. Dospoy, Mark Dospoy and/or my grandson, Aaron Dospoy shall have the option of taking a portion of real estate contained in this trust as their share and shall also have the option to purchase any additional real estate by doing so within six months from being notified of this provision.  In the event any of my Children predecease me his share shall pass to his issue, per stirpes and in default thereof, to my issue per stirpes.

The record does not reveal that Mark, Douglas, or Aaron exercised his option under section 3.02 to purchase trust real estate within six months of the March 6, 2013 meeting; nor does the record contain any evidence that any intent to exercise an option was communicated to the trustee during that time.  On October 8, 2013, petitioners received a letter from Lisznyai, informing them that the six-month option had expired and requesting consent for the trustee to sell trust real estate to Kevin.  Mark, Douglas, and Aaron alleged that they immediately contacted the trustee following receipt of the letter, and asked the trustee to sell them the trust real estate and to create a purchase agreement so they could obtain financing.  The trustee did not prepare a purchase agreement.  After several months, Mark, Douglas, and Aaron petitioned the probate court to interpret section 3.02 of the trust as providing that their six-month option to purchase the trust real estate did not begin until they received Liszynai's letter.  They argued that, because the trustee did not provide them with written notice pursuant to MCL 700.7814, their six-month option did not begin at the March 6, 2013 meeting.  The probate court agreed and ordered the trustee to sell the trust real estate to Mark, Douglas, and Aaron.  They further requested that Michael Dospoy also be allowed as a purchaser of the trust real estate, and the probate court ordered that he could be added to the purchase agreement.  This appeal followed.

---

[1] In their petition filed with the probate court, Mark, Douglas, and Aaron initially alleged that Aaron had also attended this meeting.  However, at oral argument before the probate court, Aaron's counsel indicated that this was a drafting error and that Aaron did not attend the meeting.  Kevin's petition indicated that Mark and Douglas attended the meeting, but did not state that Aaron had attended.  All parties agree on appeal that Aaron did not attend the March 6, 2013 meeting.

## II. STANDARD OF REVIEW

Where a probate court sits without a jury, this Court reviews its findings of fact for clear error. *In re Estes Estate*, 207 Mich App 194, 208; 523 NW2d 863 (1994), lv den 448 Mich 940 (1995); MCR 2.613(C) ("Findings of fact by the trial court may not be set aside unless clearly erroneous."). "A finding is clear error when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Id*. This Court reviews questions of law de novo. *In re Estate of Bem*, 247 Mich App 427, 433; 637 NW2d 506 (2001). "We review de novo a probate court's construction and interpretation of the language used in a . . . trust." *In re Stillwell Trust*, 299 Mich App 289, 294; 829 NW2d 353 (2012), lv den 494 Mich 868 (2013), recon den 495 Mich 868 (2013). We also review de novo questions of statutory interpretation. *In re Draves Trust*, 298 Mich App 745, 759; 828 NW2d 83 (2012).

## III. ANALYSIS

Kevin argues that the trial court erred in interpreting section 3.02 of the trust as requiring that written notice be provided to Mark, Douglas, and Aaron, in order to commence the six-month period for the exercise of the option to purchase, and further erred in ordering that the trustee prepare a purchase agreement for Mark, Douglas, and Aaron. We agree that neither section 3.02 of the trust nor the Michigan trust code requires written notification, and agree that the trial court erred in its analysis. However, with respect to Aaron, the record does not reflect whether or when he received (or should be deemed to have received) notice of his rights under section 3.02 of the trust, and we accordingly remand for further proceedings on that issue.

"A trust is a right, enforceable solely in equity, to the beneficial enjoyment of property the legal title to which is vested in another." *Rossman v Marsh*, 287 Mich 720, 727; 286 NW 83 (1939). The Michigan trust code, MCL 700.7101 et seq., applies to trusts. MCL 700.7102. Except in certain circumstances, "the terms of a trust prevail over any provision" of the Michigan trust code. MCL 700.7105(2). "In resolving a dispute concerning the meaning of a trust, a court's sole objective is to ascertain and give effect to the intent of the settlor. The intent of the settlor is to be carried out as nearly as possible." *In re Kostin*, 278 Mich App 47, 53; 748 NW2d 583 (2008) (citations omitted).[2] This Court applies the general rules used to interpret wills when interpreting trusts. See *In re Maloney Trust*, 423 Mich 632, 639; 377 NW2d 791 (1985). The settlor's intent must be determined from the trust instrument itself, and "[t]he law is loath to supplement the language of [a trust] with extrinsic information." *Id*. Intent is determined from the plain language used, as gathered from the entire trust instrument. See *In re Raymond*, 483 Mich 48, 52; 764 NW2d 1 (2009); *Union Guardian Trust Co v Nichols*, 311 Mich 107, 114; 18

---

[2] Kevin argues on appeal that the probate court erred by considering extrinsic evidence when it considered Dospoy's intent in construing the trust. However, the record reflects that the probate court gleaned the settlor's intent from the language of the trust itself, which is proper. See *In re Maloney Trust*, 423 Mich 632, 639; 377 NW2d 791 (1985), *In re Kremlick Estate*, 417 Mich 237, 240; 331 NW2d 228 (1983). Although we find that the probate court erred in its interpretation of the trust, we do not find that it improperly considered extrinsic evidence.

NW2d 383 (1945). "This Court must attempt to construe the instrument so that each word has meaning." *In re Kostin*, 278 Mich App at 53. To determine the meaning of a word in a trust provision, this Court may refer to a dictionary. *In re Gerald L Pollack Trust*, ___ Mich App ___, ___; ___ NW2d ___ (2015), slip op at 10. If no ambiguity exists in the trust language, the trust must be enforced as written. See *Mich Trust Co v Grand Rapids Hotel Co.*, 265 Mich 328, 338; 251 NW 414 (1933).

In this case, the parties do not dispute that Dospoy's trust was a valid trust. *Rossman*, 287 Mich at 727. The relevant provision of section 3.02 of the trust states as follows:

> My sons Douglas L. Dospoy, Mark Dospoy, and/or my grandson, Aaron Dospoy shall have the option of taking a portion of real estate contained in this trust as their share and shall also have the option to purchase any additional real estate by doing so within six months from being notified of this provision.

Furthermore, section 5.02(1) of the trust gave the trustee the power to convey trust real estate "for any period and upon any terms and conditions whatsoever to any person . . . ."

According to *Black's Law Dictionary* (9th ed), p 1167, "to notify" means "[t]o inform (a person or group) in writing or by any method that is understood." Therefore, the plain meaning of section 3.02 does not require written notice; rather, it merely requires notice "by any method that is understood." *Id*. Because there is no ambiguity, the plain language used must be given effect. *Mich Trust Co*, 265 Mich at 338. Furthermore, it was clear from the plain language of the trust that Dospoy's intent was that if Mark, Douglas, or Aaron did not purchase trust real estate within those six months, the trustee had the power to sell the trust real estate pursuant to section 5.02(1). *Mich Trust Co*, 265 Mich at 338.

The parties agree that Mark and Douglas were notified of their rights under section 3.02 of the trust at the March 6, 2013 meeting. Mark and Douglas do not dispute that, at this meeting, the trust was read to them and they were informed of their six-month option to purchase the trust real estate. Although it is not clear whether they were provided with written notification, the trust does not require such notification; rather, they only needed to be informed "by any method that is understood." Six months from March 6, 2013 was September 6, 2013. Therefore, according to section 3.02 of the trust, their option to purchase the trust real estate expired on September 6, 2013. *Mich Trust Co*, 265 Mich at 338. The record is devoid of evidence that Mark or Douglas purchased, attempted to purchase, or indicated a desire to purchase the trust real estate before September 6, 2013. Rather, the record indicates that they did not take steps to exercise their option until after they received Lisznyai's October letter.

The probate court appeared to rely on MCL 700.7814(2)(b) or (c) in holding that because Mark, Douglas, and Aaron were not provided with written notice of section 3.02 of the trust until they received Lisznyai's letter, the six-month time period for purchasing the trust real estate did not begin to run until October 2013. This was clear error. MCL 700.7814(2)(b) states that "[a] trustee shall[,] . . . within 63 days after accepting a trusteeship, notify the qualified trust beneficiaries of the acceptance, of the court in which the trust is registered, if it is registered, and of the trustee's name, address, and telephone number." MCL 700.7814(2)(b). MCL 700.7814(2)(c) states that

[a] trustee shall[,] . . . within 63 days after the date the trustee acquires knowledge of the creation of an irrevocable trust, or the date the trustee acquires knowledge that a formerly revocable trust has become irrevocable, whether by the death of the settlor or otherwise, notify the qualified trust beneficiaries of the trust's existence, of the identity of the settlor or settlors, of the court in which the trust is registered, if it is registered, and of the right to request a copy of the terms of the trust that describe or affect the trust beneficiary's interests. [MCL 700.7814(2)(c).]

We interpret statutes according to their plain meaning. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). The plain meaning of MCL 700.7814(2)(b) is that the trustee must, within 63 days of accepting the trusteeship, notify beneficiaries of that acceptance and of various details regarding registration of the trust. *Id*. The plain meaning of MCL 700.7814(2)(c) is that the trustee must, within 63 days of a revocable trust becoming irrevocable, notify the beneficiaries of the existence of the trust, of the identity of the settlor or settlers, and of various details regarding registration of the trust. *Id*. Neither MCL 700.7814(2)(b) nor (c) applies to the issue of whether any petitioner was notified of his rights under section 3.02 of the trust such that the six-month option to purchase trust real estate began to run. Rather, MCL 700.7814 establishes certain duties of a trustee, a breach of which may provide a trust beneficiary with a cause of action against the trustee. Although, pursuant to MCL 700.7105(2)(i), a trust provision cannot override the requirements of MCL 700.7814(2)(b) and (c), section 3.02 of the trust does not attempt to or actually override MCL 700.7814(2)(b) or (c). Rather, section 3.02 merely establishes, among other things, when Mark, Douglas, and Aaron's right to purchase the trust real estate begins and ends. Neither the probate court nor any party provided an explanation regarding why the application of MCL 700.7814 would compel the conclusion that notification of this right did not occur at the March 6, 2013 meeting.[3]

In sum, section 3.02 affords Mark, Douglas, and Aaron the option to purchase trust real estate within six months of being notified of their option to do so. The probate court erred in applying MCL 700.7814, instead of section 3.02, to the question of when their option to purchase the trust real estate began. MCL 700.7105(2). Mark and Douglas were notified of their option on March 6, 2013, and failed to exercise it within six months of that date; therefore, subject to the caveat described below, the trustee could sell the property to anyone pursuant to section 5.02(1). *Mich Trust Co*, 265 Mich at 338.

---

[3] Further, even if MCL 700.7814 applied to section 3.02, the statutory provisions cited, unlike other sections of the Michigan trust code, do not explicitly provide for notice *in writing*. See, e.g., MCL 700.7108(4). Such exclusion of an explicit writing requirement, when that requirement is present in other statutory sections, should be construed as intentional, and this Court should not read provisions into a statute not intended by the Legislature. See *Farrington v Total Petroleum, Inc*, 442 Mich 201, 210; 501 NW2d 76 (1993) ("Courts cannot assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute, and then, on the basis of that assumption, apply what is not there."); see also *Polkton Charter Twp*, 265 Mich at 103.

However, with regard to Aaron, all parties agree that Aaron was not present at the March meeting. The record is devoid of evidence regarding whether or when Aaron was notified (or should be deemed to have been notified) of his rights under section 3.02 of the trust. Although Kevin provides an affidavit (from himself) stating that all petitioners were provided with a copy of the trust at least one year prior to Dospoy's death, section 3.02 is found in Article III of the trust, entitled "Duties Upon My Death." Thus, reading section 3.02 in light of the entire trust instrument, *Union Guardian Trust Co v Nichols*, 311 Mich at 114, section 3.02 imposes a duty upon the trustee to provide notification of rights arising under section 3.02 upon the death of the settlor, which duty the trustee attempted to fulfill at the March meeting.[4] However, Aaron's absence from that meeting requires consideration of whether or when the trustee carried out that duty with respect to Aaron. The record reflects that the trial court took no evidence, and made no findings, in that regard, including, for example, regarding whether the trustee provided notification to Aaron in another communication, and regarding whether the circumstances of Aaron's age, family or living relationships with Mark or Douglas, communications between Aaron and Mark or Douglas, or other appropriate considerations, were such that the trustee's duty should be deemed to have been fulfilled with respect to Aaron as of the March meeting, notwithstanding that Aaron was not personally present at that meeting. On remand, the trial court should consider those and any other appropriate issues and issue further findings with respect to Aaron.

Reversed with respect to Mark and Douglas. Remanded for further proceedings with respect to Aaron. We do not retain jurisdiction.

/s/ Deborah A. Servitto
/s/ Jane M. Beckering
/s/ Mark T. Boonstra

---

[4] Indeed, to hold otherwise would require us to find that the option to purchase had expired *prior* to the settlor's death, as the parties would have been "notified" upon their receipt of the trust amendment over one year before John's death. Such a result is clearly contrary to the intent of the settlor, and we decline to adopt a construction that leads to such a result. *Kostin*, 278 Mich App at 53.